F. A. PIPER CO. v. OPPENHEIMER et al.

(Court of Civil Appeals of Texas. San Antonio.
June 11, 1913. Rehearing Denied
June 28, 1913.)

1. SALES (§ 411*)—ACTIONS FOR BREACH—PE-
TITION—CONSTRUCTION.

Where the petition, in an action for dam-
ages suffered by the buyer on a car load of
corn chops because of inferior condition, alleged
that it was understood between the buyer and
seller that the chops should and would be used
as food for live stock, such averment, in the
absence of a special exception, sufficiently al-
leges an implied contract that the chops should
be fit for stock food.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. §§ 1161–1164; Dec. Dig. § 411.*]

2. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS
OF ERROR—NECESSITY.

In an action by a buyer of corn chops for
damages for their defective condition, he can-
not complain on appeal that the court erred
in holding the petition insufficient to charge an
implied warranty of fitness for stock food, where
the only assignment of error was that the court
erred in not holding the petition sufficient to
charge on implied contract of merchantability
and soundness.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig.
§ 719.*]

3. SALES (§ 437*)—ACTIONS BY BUYER—PETI-
TION—SUFFICIENCY.

In an action by a buyer of grain for dam-
ages for the inferior quality of a car of corn
chops, a petition, merely alleging a known pur-
pose to use the chops as stock food, is insuffi-
cient to set up an implied warranty of sound-
ness or merchantability.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. §§ 1248–1257; Dec. Dig. § 437.*]

4. SALES (§ 274*)—IMPLIED WARRANTY.

Where one dealer sells stock food to an-
other merely as an article of merchandise, there
is no implied warranty that it is fit for use as
stock food.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. §§ 777–779; Dec. Dig. § 274.*]

Appeal from Bexar County Court for Civil
Cases; Ira P. Hildebrand, Special Judge.

Action by the F. A. Piper Company against
M. L. Oppenheimer and others. From a
judgment for defendants, plaintiff appeals.
Affirmed.

Davis & Williams, of San Antonio, for ap-
pellant. Hertzberg, Barrett & Kercheville,
of San Antonio, for appellees.

MOURSUND, J. Appellant sued appellees
to recover damages, alleged to have been
suffered by appellant on a car load of corn
chops purchased from appellees; the portion
of the petition describing the cause of action
being as follows: "That heretofore, to wit,
on or about the 31st day of January, 1910,
plaintiff agreed to purchase from defendants,
and the defendants agreed to sell and deliver
to plaintiff at Uvalde, Tex., in Uvalde coun-
ty, one car load of 30,000 pounds of pure
corn chops, at a price of $1.55 per cwt.,
said defendants contracting and warranting
that the chops to be so delivered would be
sound, pure, not spoiled, and in a merchant-
able condition, and fit food for live stock, it
being understood between plaintiff and de-
fendants that said chops should and would
be used as food for live stock when delivered
to plaintiff; that, in violation of the agree-
ments and warranties aforesaid, the defend-
ants shipped to plaintiff at Uvalde, Tex., one
car containing 300 sacks of corn chops, each
sack weighing 100 pounds, which were im-
pure, spoiled, and not in a merchantable con-
dition when they arrived at Uvalde, a large
part of said chops being spoiled and wholly
unfit for food for live stock, and all of said
chops being so impure and spoiled, at the
time of their arrival at Uvalde and at all
times thereafter, as to render then unmer-
chantable, and that their reasonable market
value at Uvalde, Tex., was $300 less than
their market value would have been had the
defendants complied with their contract and
delivered to plaintiff at Uvalde, Tex., pure
corn chops in a good condition, as agreed."
The defendants answered by general denial
and special pleas not necessary to be stated.
Upon a trial before the court judgment was
first rendered for plaintiff, but the same was
set aside and judgment rendered for defend-
ants, from which plaintiff appealed.

The trial court's findings of fact read as
follows:

"(1) That on January 31, 1910, plaintiff
agreed to purchase from the defendants, and
the defendants agreed to sell and deliver to
plaintiff at Uvalde, Tex., one car load of
30,000 pounds of pure corn chops at a price
of $1.55 per cwt., and that the defendants
expressly contracted and expressly warrant-
ed that the chops to be so delivered would
be pure corn chops, and that this was the
only express warranty agreed to by the par-
ties. That the defendants shipped to plain-
tiff at Uvalde, Tex., one car containing 300
sacks of pure corn chops, each sack weighing
100 pounds, and that said chops were pure
corn chops, and did comply with the express
warranty as to being *pure* corn chops. That
said chops were not adulterated with any
foreign substance such as Kaffir corn, etc.,
and were made purely from corn and nothing
else, and were pure corn chops.

"(2) That when said car of chops arrived
at Uvalde on the 14th day of February, 1910,
the chops were moist, but not heated, which
moist condition was a condition that could
have been discovered by plaintiff upon a
reasonable examination or inspection.

"(3) That said chops were delivered to
plaintiff, and plaintiff accepted same, and
were forthwith unloaded into the warehouse
of plaintiff without objection or complaint on
the part of plaintiff until February 26, 1910,
when plaintiff notified the defendants by let-
ter that the chops were then hot, which
were afterwards sold for the best price ob-
tainable.

"(4) That said chops were handled and

stored after being unloaded by plaintiff from the car, and because of not being properly aired, but closely stacked, by plaintiff after unloading same from the car, partly caused the chops afterwards to heat.

"(5) That at the time said chops arrived in Uvalde the moisture contained in them could have been removed if it had been discovered at such time at an expense of $50, and that the reasonable market value of said chops at the time and place of delivery, and in the condition they were at that time, was $415. That the reasonable market value of same at said time and place, if free from moisture and perfectly dry, and as ordered by plaintiff, would have been $465. That plaintiff was not negligent in failing to sooner discover the heated condition of such chops.

"(6) That said chops were afterwards sold by plaintiff, but the sales were made after the chops had become heated and had deteriorated in value since the time of delivery to plaintiff, but that plaintiff sold them within a reasonable time after discovering the heated condition.

"(7) There was no direct evidence showing the condition of the chops upon day of arrival at Uvalde, and plaintiff offered no evidence showing the chops were heated on arrival at Uvalde.

"(8) That the plaintiff had opportunities of inspecting the car of chops after it was opened, and that a reasonable inspection would have disclosed the moisture in the chops.

"(9) That the defendants never saw the chops until after they were unloaded into the warehouse of plaintiff at Uvalde.

"(10) That the car was shipped draft with bill of lading attached, and no inspection was allowed before payment of draft, and that plaintiff paid such draft and freight charges on the car of chops before the same were delivered to it.

"(11) That both plaintiff and defendants were dealers at the time of this transaction."

His conclusion of law was: "That plaintiff is not entitled to recover of defendants on the express warranty as to pure corn chops because pure corn chops were delivered to plaintiff. That plaintiff is not entitled to recover of defendants on any implied warranty as to soundness, merchantability, or fitness for live stock food, because no implied warranties are pleaded by plaintiff on which to base a judgment, and a judgment based on an implied warranty in this cause would be a variance from the plaintiff's pleadings. Therefore I conclude that judgment should be rendered for the defendants."

Appellant contends that his petition was sufficient to support proof of an implied warranty of the soundness and merchantability of the corn chops, and that the court erred in holding that it declared only upon an express contract.

[1] The petition cannot be construed as alleging an implied warranty of merchantability, as there are no allegations that plaintiff is a merchant and bought the chops for resale, and that defendant knew they were being bought by plaintiff for such purpose. In fact, there is only one allegation contained in the pleadings from which a warranty by implication arises, and that is the allegation that it was understood between plaintiff and defendant that said chops should and would be used as food for live stock when delivered to plaintiff. The word "understood," as used in this connection, should not be construed to mean "agreed," because it would be very unreasonable that parties should make the future use of goods by the buyer a subject for specific agreement. The word was evidently used to convey the idea that the seller understood or knew that the chops were to be used as food for live stock when delivered to plaintiff. This allegation, in the absence of a special exception, must be given the benefit of every reasonable intendment, and when so construed sufficiently alleges an implied contract that the chops should be fit food for live stock.

[2] However, the assignments of error make no point that the court erred in holding that no implied warranty of fitness for stock food had been alleged, but merely that the court erred in not holding the petition sufficient to charge on implied contract of merchantability and soundness.

[3] An allegation of known purpose to use chops for stock food only raises the implication that the chops shall be reasonably fit and appropriate for the purpose of feeding stock, and does not include any other or further warranties. We conclude that the court did not err in holding that no implied warranty of soundness or merchantability was alleged.

[4] We are also of the opinion that no implied warranty of fitness for stock food can be asserted in this case, because the transaction was between a grain broker who had never seen the corn and a grain dealer who bought, not for the purpose of using the same as food for live stock, but for the purpose of selling the same at retail. Battaglia v. Thomas, 5 Tex. Civ. App. 565, 23 S. W. 385, 1118; Houck v. Berg, 105 S. W. 1176.

It appears there was no evidence that the chops were heated, when delivered to plaintiff, but were merely moist, and there is no evidence that they were unfit for stock food at that time, but became so by reason of being closely stacked by plaintiff in their moist condition. It further appears from uncontradicted testimony that the trade term "pure chops" meant chops which had not been kiln dried, and that moisture was inherent in such chops.

We are of the opinion that the judgment of the trial court was correct. The evidence

failed to sustain express warranties of merchantability, soundness, and suitableness for stock food having been made, and there was no allegation of any implied warranty except that of suitableness for stock food, which was not proven to have existed or to have been breached had it existed.

The judgment is therefore affirmed.