C. M. BROWN et al., Appellants,

v.

Troy HOWARD et al., Appellees.

No. 12893.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 7, 1955.

Rehearing Denied Jan. 4, 1956.

Oliver & Oliver, San Antonio, L. B. Cooper, Cotulla, for appellants.

Moursund, Ball, Bergstrom & Barrow, San Antonio, for appellees.

NORVELL, Justice.

[1-3] The question posed by this appeal is whether or not the rule of "implied warranty" set forth in Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, has application to one formulating chemicals for use as a cattle spray. In the case cited it was held that a non-negligent processor could be held liable in damages to one injured from eating contaminated foodstuffs prepared, by him, although no privity of contract between the processor and the consumer was shown. As pointed out in the opinion, the "implied warranty" which is made the basis of liability is hardly the creature of contract but has its basis in a public policy which demands that such an obligation be imposed for the protection of the public health. This type of warranty actually sounds in tort (action upon the case) and was known to the law prior to the development of the action of assumpsit. Williston on Sales, § 195. It should not be confused with the contractual warranty, either expressed or implied, in which privity of contract is an essential element of recovery. Davis v. Ferguson, Tex.Civ.App., 255 S.W. 655, contains the generally accepted statement of the rule applying to implied contractual warranties. Turner & Clayton, Inc., v. Shackelford, Tex.Com.App., 288 S.W. 815; Baylor v. Eastern Seed Co., Tex.Civ.App., 191 S.W.2d 689; Donelson v. Fairmont Foods Co., Tex.Civ.App., 252 S.W.2d 796; Blessington v. McCrory Stores Corp., 279 App.Div. 806, 109 N.Y.S.2d 719, affirmed 305 N.Y. 140, 111 N.E.2d 421, 37 A.L.R.2d 698.

In the present case it appears that appellants, C. M. Brown and B. A. Lay, employed appellee Troy Howard to spray certain Brahman cattle owned by them. For this purpose Howard used a gallon of "Green Light" concentrate manufactured by the appellee W. J. Klauss. The label upon the gallon container gave the chemical composition of the concentrate as follows: D.D.T. 26.5%, Technical Chlordane, 24.5%, solvent, 33.2%, emulsifier, 15.8%. The directions on the label called for a mixture of one gallon of concentrate to 220 gallons of water. Howard testified that he used this approximate mixture in spraying appellants' cattle. There is evidence in the record that while D.D.T. and chlordane are both well-known toxic substances, they are not necessarily of a dangerous nature, and are harmless to cattle even when used in much higher concentrations than that recommended by the manufacturer's label. There was evidence, however, that sprays containing chlordane are not recommended for dairy cows because of the danger of milk contamination, and that Brahman cattle, by reason of their having sweat glands in the skin are more susceptible to chlordane poisoning than are other species of cattle. The jury found that a number of appellants' cattle died and others were injured as a result of poisoning from the chlordane contained in the Green Light spray used by the appellee Howard. The court below rendered judgment for the appellees non obstante veredicto.

■ Appellants make no complaint of the judgment in favor of Howard but urge that the judgment as to Klauss, the manufacturer or formulator of the Green Light concentrate should be reversed. In their brief it is stated that, "the case does not admit of the element of negligence because such was not in appellants' pleadings * * * nor does the case admit the element of privity of contract, because it was without dispute that the appellee manufactured the product and sold it to the dealer for the purpose of being sold to the user, as it was in this case." No contract was ever entered into between Klauss and appellants or between Klauss and Howard for that matter. It is not clear when the particular concentrate was manufactured nor its manner of passage from jobber to retailer to consumer. There can be no question of implied *contractual* warranty in the case. Baylor v. Eastern Seed Co., Tex.Civ.App., 191 S.W.2d 689.

■■ No one disputes the proposition that a processor of chemicals for cattle spraying purposes should be held liable for the proximate results of his negligence, but appellants by their pleadings in effect

place Klauss in the position of a non-negligent manufacturer and the case must be viewed from that standpoint. In a sense then an attempt is being made to affix liability without fault. Such rules of liability have been described as onerous and require a strong public policy to support them. Race v. Krum, 222 N.Y. 410, 118 N.E. 853, 854, L.R.A.1918F, 1172. The only authority cited by appellants in support of their position, other than the Decker case, is International Milling Co. v. Jernigan, Tex.Civ.App., 191 S.W.2d 526, a plea of privilege case in which the rule was apparently extended to include animal foodstuffs. Cf. F. A. Piper Co. v. Oppenheimer, Tex.Civ.App., 158 S.W. 777; Williston on Sales, § 242. The acceptance of appellants' theory in the present case would require a further extension which is not sanctioned by any Texas case called to our attention and one we feel unauthorized to make. A careful reading of the Decker case and the authorities therein cited disclose an emphasis upon "food for human consumption."

 Williston points out that "importance is also attached to the fact that the buyer is buying for *immediate* consumption" and cites the Decker case as being in accord with the text statement. Williston on Sales, § 242. The chemicals here involved were not intended as a foodstuff for either man or animal but as an insecticide, the label of which showed plainly that it contained toxic substances. It required further processing, mixing or diluting before it could be used, and in this case, as must necessarily be the situation in most instances of sales to jobber, retailer and spraying contractor, there is some uncertainty as to the length of the period of time between manufacture and use. It is "the prevailing rule that the mere resale of a warranted article does not give the subpurchaser a right to sue the original seller for damages caused by defects either in the title or quality of the goods. Williston on Sales, § 244. See also, 77 C.J.S., Sales, § 305, p. 1121; Am.Jur. 487, Sales, §§ 306, 307; A.L.R. Annotations, Liability of Manufacturers for Injuries to Consumers, particularly the cases cited under the subheading "Liability on theory of implied warranty," 17 A.L.R. 709, 39 A.L.R. 1000, 63 A.L.R. 349, 88 A.L.R. 534, 105 A.L.R. 1511, 111 A.L.R. 1251, 140 A.L.R. 250 and 142 A.L.R. 1494.

We feel unauthorized on the basis of the Decker case to recognize a further exception to the general rule and impose liability in this case absent privity of contract. Baylor v. Eastern Seed Co., Tex. Civ.App., 191 S.W.2d 689.

In our opinion, the trial judge followed the law as declared by the decided cases and his action in granting the motion for judgment non obstante veredicto is accordingly affirmed.