**C. K. GRAVIS, Jr., et ux., Appellants,**

**v.**

**PHYSICIANS & SURGEONS HOSPITAL OF ALICE et al., Appellees.**

No. 14564.

Court of Civil Appeals of Texas.

San Antonio.

April 5, 1967.

Rehearing Denied June 7, 1967.

Sidney P. Chandler, Trimble & Dobbs, Corpus Christi, for appellants.

Lloyd, Lloyd, Dean & Ellzey, Alice, Lewright, Dyer & Redford, Corpus Christi, Perkins, Floyd, Davis & Oden, Alice, for appellees.

KLINGEMAN, Justice.

This is an appeal from a summary judgment in a malpractice case. On the evening of October 22, 1963, Elma Gravis complained of pain in her abdomen, and her husband, C. K. Gravis, Jr., telephoned Dr. Philip S. Joseph who agreed to meet them at the hospital. Shortly thereafter, Dr. Joseph examined Mrs. Gravis in the emergency room of the Physicians & Surgeons Hospital of Alice, Texas, and she was given some medicine for pain and placed in a room in the hospital for observation. On the next day, she was given other examinations and tests, including X-rays. During the period of time between her admission and operation, Mrs. Gravis was given various medications, including sedatives, pain-relieving medicine, antibiotics, anti-nauseants, euphorics, vitamins, tranquilizers, and other medicine. On October 24, 1963, at about 12:30 p. m. an exploratory operation was performed on Mrs. Gravis, and for the operation Mrs. Gravis was given a spinal anesthetic and pentothal sodium intravenously during the operation. An intestinal obstruction was found during the operation and corrected. Since the operation Mrs. Gravis has suffered from a number of physical disabilities, including bladder trouble, phlebitis of the left leg, and partial paralysis.

Appellants based their suit upon theories of assault and battery, fraud, duty to warn, breach of contract, administrative negligence, and numerous alleged acts of negligence and malpractice. Extensive discovery proceedings were had, and the record contains numerous depositions, including six from doctors, voluminous pleadings on the part of all parties, and lengthy affidavits. Appellees each filed motion for summary judgment and, after a full hearing, the trial court found that there was no genuine issue as to any material fact and granted appellees' motions for summary judgment, and decreed that appellants take nothing against said appellees.

For better identification of the parties, Mrs. Elma Gravis was the patient operated on, her husband being C. K. Gravis, Jr., and they were plaintiffs in the trial court. Dr. Philip S. Joseph was the operating physician, Dr. John C. Turnham, Jr., was the assisting physician, Ruth B. Grose was the supervisor of nurses and anesthetist at the Physicians & Surgeons Hospital of Alice, where Mrs. Gravis was hospitalized and where the operation was performed, and they were defendants in the trial court.

Appellants' two points of error on this appeal are:

"FIRST POINT OF ERROR

The Appellees, Physicians and Surgeons Hospital of Alice, Dr. Philip S. Joseph, Dr. John C. Turnham, Jr., and Ruth Grose, each, having failed to plead and prove that there are no genuine material issues of fact in this case the trial court erred in sustaining each of the Appellees' motions for summary judgment.

"SECOND POINT OF ERROR

The Appellees, Physicians and Surgeons Hospital of Alice, Dr. Philip S.

Joseph, Dr. John C. Turnham, Jr., and Ruth Grose, each, having failed to plead and prove that there are no genuine material issues of fact in this case the trial court erred in entering judgment against the Appellants, C. K. Gravis, Jr., and Elma Gravis, as entered, and in favor of the Appellees that the Appellants take nothing by this suit."

After a thorough review of the record, we are of the opinion that appellants' points of error are without merit.

■ Appellants' brief consists of two parts, to-wit, a brief of 15 pages, double spaced, and attached thereto and made a part thereof, is a copy of the brief appellants submitted to the trial court, which contains 140 pages, mostly single spaced. Appellees contend that appellants' points of error are so general that they are unable to determine the precise points which appellants bring to this Court for review, and are insufficient to warrant consideration on appeal. The cases which appellees rely upon in this contention [1] hold that while points may be too general, where the grounds upon which appellants apparently relied are disclosed in the statement and arguments accompanying the points on appeal, a review court will consider such points. Under such construction, we will attempt to discuss appellants' germane contentions as we understand them from their brief.

## ASSAULT AND BATTERY THEORY OF RECOVERY

Appellants' complaints on these grounds appear to be:

(1) That there was no consent to such operation.

(2) That if there was any consent, either express or implied, it was not an informed or knowledgeable consent.

■ The situation involved in the case before us is not analogous to that involved in Moss v. Rishworth, 222 S.W. 225 (Tex. Com.App.); Thaxton v. Reed, Tex.Civ. App., 339 S.W.2d 241, and Mohr v. Williams, 95 Minn. 261, 104 N.W. 12, 1 L.R.A., N.S., 439 (1905), all of which cases are malpractice cases involving theories of assault and battery. In the case before us, according to the testimony of Dr. Joseph, his initial examination at the time of admission revealed a generalized tenderness in the abdominal area, and at that time he reached no conclusion as to the cause of Mrs. Gravis' complaints. Further examination and tests were made the next day and, according to Dr. Joseph, an X-ray taken on October 23, revealed a normal abdomen with no pathology indicated. According to the medical evidence in the record, no emergency existed at this time, and there is nothing in the record to indicate that any operation was contemplated at that time. However, on the morning of October 24, this situation changed; Mrs. Gravis' blood count had gone up, and, according to Dr. Joseph, this indicated to him there was a possibility of an inflammatory process, possibly the appendix, and X-rays taken that morning indicated that the small intestinal loops appeared somewhat dilated. Dr. Joseph testified that it was not until the morning of the 24th that he came to the conclusion that Mrs. Gravis should be operated on. Up to this time, the matter of consent to an operation had not arisen. However, an emergency situation now existed. In such a situation, there is respectable authority that the practitioner may be justified in performing an operation with-

1. Bell v. Currie, Tex.Civ.App., 404 S.W. 2d 321, no writ; Cotten v. Republic National Bank of Dallas, Tex.Civ.App., 395 S.W.2d 930, writ ref'd n. r. e.; Covington v. City of Denison, Tex.Civ. App., 369 S.W.2d 824, no writ; Ballard v. Associates Inv. Co., Tex.Civ.App., 368 S.W.2d 232, writ ref'd n. r. e.; Little v. Employees Security Life Ins. Co., Tex. Civ.App., 343 S.W.2d 517, writ ref'd n. r. e.; White v. Great American Reserve Ins. Co., Tex.Civ.App., 342 S.W. 2d 793, no writ.

out the express consent of the patient or of anyone authorized to act on his behalf. 45 Tex.Jur.2d, § 101, p. 262; 139 A.L.R. 1370 at p. 1374. It is stated in 76 A.L.R. 566, that the general rule recognizes that consent may be implied under some circumstances, or the existence of an emergency, may justify operating without any consent. Indeed, in Jackovach v. Yocom, 212 Iowa 914, 237 N.W. 444, 76 A.L.R. 551 (1931), where an amputation was performed, it was held that since the defendant was confronted with an emergency which endangered the life and health of the patient, it was his duty to do that which the occasion demanded within the usual and customary practice among physicians and surgeons in the same or similar localities, without the consent of the patient. 10 Tex. L.Rev. 99.

Appellants presented evidence that from the time Mrs. Gravis was admitted to the hospital to the time of the operation she was under heavy sedation and under the influence of pain-killing drugs, and was quite groggy. Mrs. Gravis stated that she was under pain-relieving medicine to such an extent that she did not know what was happening about 80% of the time prior to the operation, and further testified that she did not recall anything that happened on the morning of the operation. Giving full credence to appellants' testimony as to Mrs. Gravis' mental condition on the morning of the operation, and accepting Mrs. Gravis' testimony that she was unable to give her consent in any form or manner on the morning of the operation, according to appellants' own contention it would not have been possible to obtain a valid consent from Mrs. Gravis on the morning of the operation, at the time the emergency arose to perform the operation. The evidence is undisputed, however, that at such time Dr. Joseph discussed such operation with C. K. Gravis, Jr., the husband of Elma Gravis, and told him that it was going to be necessary to perform an exploratory operation on Mrs. Gravis, and that Mr. Gravis stated, "We got to do something, Doc, or I am

going to lose Elma." Mr. Gravis, when asked in his deposition, "In other words, you agreed with the exploratory operation and whatever he thought was necessary to do," stated, "Well sure, I'm not a doctor." It is further undisputed that at such time Mr. Gravis, on his own volition, signed a written consent agreement consenting to the performing of whatever treatment or operation, and the administering of whatever anesthetics the physician believed to be necessary or advisable. There is no evidence in the record that Mrs. Gravis or her husband ever objected to the operation to be performed. Appellants' chief complaint appears to be with regard to the anesthetic used in connection with such operation. The anesthetic was incidental to the operation and was necessary to perform the operation. Further, all the medical evidence indicates that the type of anesthetic used is one that is commonly used in operations of this type, and is considered one of the safest types of anesthetics.

■ Appellants rely chiefly on the recent case of Scott v. Wilson, Tex.Civ.App., 396 S.W.2d 532, affirmed, Tex., 412 S.W.2d 299 (Feb. 4, 1967), on the matter of informed consent. We do not have the same situation in this case as in Scott. This Court in the Scott case points out that it was not an emergency operation which had to be performed to preserve Scott's life or health, and that such operation was an elective operation. The Supreme Court in affirming this Court pointed out that the action therein was one of malpractice for a physician's failure to conform to medical standards in obtaining the patient's consent, and that regardless of what some earlier informed consent cases suggest, such an action need not be pleaded as one for assault and battery, and that the traditional elements of assault and battery are absent in most malpractice cases based upon a physician's failure to make sufficient disclosure. See also Note, 44 Tex.L.Rev. 799, 801, where it is asserted that whether a physician fulfills his duty to inform the patient is a question of medical practice and therefore

essentially one of negligence. The Supreme Court held in Scott v. Wilson, that plaintiff had the burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community, under the same or similar circumstances, would have disclosed to his patient about the risks incident to a proposed diagnosis or treatment, that the physician departed from this standard, causation and damages. The appellants in the case before us wholly failed to meet this burden.

## FRAUD

There are no pleadings or proof in the record constituting any basis of fraud.

## DUTY TO INFORM

■ It is somewhat difficult to determine whether appellants rely upon Scott v. Wilson, supra, only on the theory of assault and battery, or also on the duty to warn or on negligence. Scott v. Wilson offers no great comfort to appellants under any of such bases. It must be remembered that Scott v. Wilson involved a prospective ear operation, a stapedectomy, wherein the patient could choose whether or not to have an operation. It did not involve an emergency situation as we have in this case, where the life or health of the patient was in danger. Our Supreme Court in Scott v. Wilson quoted from the recent opinion by the Supreme Court of Missouri in Aiken v. Clary, 396 S.W.2d 668, 674, as follows:

"We have reexamined this question and have concluded that the question of what disclosure of risks incident to proposed treatment should be made in a particular situation involves medical judgment and that expert testimony thereon should be required in malpractice cases involving that issue. The question to be determined by the jury is whether defendant doctor in that particular situation failed to adhere to a standard of reasonable care. These are not matters of common knowledge or within the experience of lay-edge or within the experience of lay-men. Expert medical evidence thereon is just as necessary as is such testimony on the correctness of the handling in cases involving surgery or treatment. In Fisher v. Wilkinson, Mo., 382 S.W.2d 627, 632, we held: 'Without the aid of expert medical testimony in this case a jury could not, without resorting to conjecture and surmise or by setting up an arbitrary standard of their own, determine that defendants failed to exercise their skill and use the care exercised by the ordinarily skillful, careful and prudent physician acting under the same or similar circumstances.' And, as we said in Pedigo v. Roseberry, 340 Mo. 724, 736, 102 S.W.2d 600, 607: 'Juries should not be thus turned loose and privileged to say, perchance, the method of treating an injury * * * [or an illness] was negligent notwithstanding, for instance, the uncontradicted competent testimony establish[ing] that the uniformly adopted practice of the most skillful surgeons [or physicians] had been followed.' The question is not what, regarding the risks involved, the juror would relate to the patient under the same or similar circumstances, or even what a reasonable *man* would relate, but what a reasonable *medical practitioner* would do. Such practitioner would consider the state of the patient's health, the condition of his heart and nervous system, his mental state, and would take into account, among other things, whether the risks involved were mere remote possibilities or something which occurred with some sort of frequency or regularity. This determination involves medical judgment as to whether disclosure of possible risks may have such an adverse effect on the patient as to jeopardize success of the proposed therapy, *no matter how expertly performed*."

Appellants' complaints with regard to duty to warn in the case before us apparently relate to their contention that the type of anesthetic to be used was not discussed with them, as there is no evidence in

the record that appellants made any objection to the emergency operation. In Bell v. Umstattd, Tex.Civ.App., 401 S.W.2d 306, writ dism'd, which was a malpractice suit against an anesthesiologist, the Court stated that the anesthetic was incidental to the operation, and that under the circumstances in that case the anesthesiologist, barring inquiry, was not under a duty to disclose the method he or the surgeon would select in administering the anesthetic. The medical testimony in the case before us is to the effect that the type of anesthetic used is one that is widely used; is frequently used in the type of operation which Elma Gravis underwent; that reactions are extremely rare from this type of anesthetic; and that the risk involved of the type of reaction suffered by Mrs. Gravis is very low, in the area of one in two hundred thousand. In addition, medical witnesses testified without contradiction that in their opinion Dr. Joseph and Ruth Grose, the anesthesiologist, had acted according to accepted methods of medical practice with regard to the propriety and administration of the anesthetic used and that they did not do anything which would not have been done, or failed to do anything that would have been done, in the exercise of ordinary care by doctors and anesthesiologists.

## BREACH OF CONTRACT

■ Appellants' contentions in this regard appear to be:

(1) Appellants claim that on the occasion that Dr. Joseph first informed them that an exploratory operation was going to have to be performed on Elma Gravis, there was some discussion between Dr. Joseph and the husband and son of Elma Gravis with regard to taking Mrs. Gravis to a hospital in Corpus Christi and placing her under the care of a Corpus Christi doctor, and that Dr. Joseph told them there was no necessity for this, that they could do the operation in Alice as well as in Corpus Christi.

(2) That appellees would do no injury to Mrs. Gravis. There is no medical evidence in the record that Mrs. Gravis did not receive the same care and treatment as she would have received in Corpus Christi, nor is there any medical evidence showing that if Mrs. Gravis had been taken to Corpus Christi that the disabilities she is now suffering from would not have resulted.

■ There must be expert proof of negligence and proximate cause. Amerine v. Hunter, Tex.Civ.App., 335 S.W.2d 643, writ ref'd n. r. e. The testimony of all the doctors, including some Corpus Christi doctors, was that the operation was skillfully performed, under the proper anesthetic properly administered. In the absence of a special contract to that effect, a physician or surgeon is not an insurer and does not warrant a cure or favorable result. 45 Tex.Jur.2d § 120, p. 287. The physician is not an insurer and does not warrant a cure, but impliedly contracts that he possesses, and he is required to use and exercise that degree of skill and care which physicians practicing in similar locations ordinarily possess. Turner v. Stoker, Tex. Civ.App., 289 S.W. 190, writ ref'd. There is no evidence in this case of any special contract, or that appellee doctors did not exercise that degree of care and skill possessed by physicians practicing in that area.

## ADMINISTRATIVE NEGLIGENCE

■ Appellants' contentions in this regard appear to be:

(1) That the anesthetics and other drugs administered to Elma Gravis were not compounded by hospital employed licensed pharmacists. In support of this contention, appellants cite Art. 4542a, Vernon's Ann.Civ.St., and the case of Sullivan v. Sisters of St. Francis of Texas, Tex.Civ. App., 374 S.W.2d 294, no writ. Such statute relates to pharmacies and the operation thereof. We find no evidence in the record that the appellee hospital was op-

erating a pharmacy within the meaning of the statute, or that would make the hospital subject to the provisions of such statute. Section 8 of such statute contains a specific exemption of such act with regard to licensed practitioners of medicine, and specifically provides that nothing contained in such act shall be construed to prevent the personal administration of drugs and medicines carried by licensed physicians in order to supply the immediate needs of their patients. The evidence in this case is clear that the drugs used were administered by the treating physicians and their agents, under their supervision, and there is no evidence that the hospital was operating a pharmacy. Further, there is no expert medical evidence of any actual negligence of the appellees with regard to the preparing and compounding of the drugs or the anesthetics used, or that any act or omission of the appellees in this regard proximately caused the injuries or damages claimed by appellants.

## NEGLIGENCE AND MALPRACTICE

■ The much quoted case of Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1, furnishes the qualitative test to be applied by Texas Courts to a plaintiff's evidence in a malpractice suit. The Supreme Court stated: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries." In the case before us, although exhaustive discovery proceedings were had, and there is contained in the record depositions of six doctors, all of whom underwent extensive direct and cross examination by competent counsel for all parties, there is no expert testimony to support appellants' allegations of negligence, and there is no evidence of a medical nature proving or tending to prove negligence

on the part of appellees or either of them. The Supreme Court in the recent case of Hart v. Van Zandt, 399 S.W.2d 791 (1965), stated:

"In determining negligence in a case such as this, which concerns the highly specialized art of treating disease, the court and jury must be dependent on expert testimony. There can be no other guide, and where want of skill and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. The burden of proof is on the plaintiff to show that the injury was negligently caused by the defendant and it is not enough to show the injury together with the expert opinion that it might have occurred from the doctor's negligence and from other causes not the fault of the doctor. Such evidence has no tendency to show that negligence did cause the injury. Ewing v. Goode, 78 F. 442, 444 (C.C.Ohio, 1897); Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 (1949); Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 264 S.W.2d 689 (1954)."

■ Appellants rely on excerpts from a number of medical books which were attached as exhibits to appellants' answer to the motions for summary judgment, as supplying their expert medical testimony, and apparently take the position that such excerpts are original evidence in this cause and should be so considered. The law in Texas is to the contrary. The Supreme Court in Bowles v. Bourdon, supra, held that excerpts read by plaintiff counsel from standard medical authorities in questioning defendant's physicians and plaintiff's medical witnesses in a malpractice action could not be considered as evidence by the Supreme Court, and that when a doctor testifies as an expert relative to injury or disease he may be asked to identify a given work as a standard authority on the subject involved, and, if he so recognizes it, excerpts therefrom may be read, not as origi-

nal evidence but solely to discredit the doctor's testimony, or to test its weight. See also 32 C.J.S. Evidence § 718, p. 1023. Appellants' attorney interrogated appellee doctors and other medical witnesses at great length with questions which assumed the existence of certain facts which were never proved, i. e., that a high spinal was given, that the spinal anesthetic was injected at the wrong place, that the drugs and anesthetics used were old, that the solution was too strong, that proper methods of sterilization were not used, that the spinal anesthetic used was not sterile, that too many toxicant drugs were administered, and asked if such facts existed, would certain stated results follow or be obtained. A large number of such questions were excerpts taken from the medical texts above referred to, which in some instances the questioned doctor stated that he did not recognize as authority or had never heard of. In response to such questions, the doctors either denied that a certain result would happen or stated, "it is possible." This is not the type of proof required in a medical malpractice suit. Bowles v. Bourdon, supra; Hart v. Van Zandt, supra.

In a recent case involving a question of cancer aggravation our Supreme Court stated: "It is our view that such occurrence, or not, is a question of science determinable only from the testimony of expert medical professionals. * * * Casual connection in such a fact situation must rest in reasonable probabilities; otherwise, the inference that such actually did occur can be no more than speculation and conjecture." Insurance Co. of North America v. Howard Myers, Tex., 411 S.W.2d 710. There is no expert evidence tendered by appellants in this case, by affidavits, depositions or otherwise, that appellees were negligent or that appellee doctors, nurses, or the hospital did any act which any ordinary prudent doctor, nurse or hospital in such area would not have done under the same or similar circumstances. Appellants failed to meet the burden of proof required of them in this State in malpractice cases.

In determining the question of proximate cause, the general rule is that "proof of causation must go beyond a showing of a possibility that the injuries arose from the defendant's negligence or lack of skill, since the jury will not be permitted to speculate as to the causes of the injury. Thus, where the evidence considered most favorably to the plaintiff develops more than one equally probable cause, for one or more of which the defendant is not responsible, the plaintiff has failed to sustain his burden of proof." 13 A.L.R.2d 22. Hart v. Van Zandt, supra. The testimony of the medical experts in this case indicates that, in all probability, the injuries and disabilities that Mrs. Gravis suffered were the result of an allergic response to the spinal anesthetic; that this is extremely rare and unforeseeable; that there is no recognized test for spinal anesthetics; that these rare reactions of patients to proper drugs is unpredictable and beyond the control of the physician. Appellants have failed to prove by expert testimony that any act or omission of appellees, independent of one or more other possible causes, including the patient's possible allergy to the anesthetic, was a proximate cause of any injury to Mrs. Gravis. Where proof discloses that a given result may have occurred by reason of more than one proximate cause and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of that choice to the jury is improper. Bowles v. Bourdon, supra.

After a careful examination of the entire record, we are of the opinion that it is completely void of the elements of proof which are essential to a recovery by appellants. We find no error of the trial court in sustaining appellees' motions for summary judgment and granting a take-nothing judgment.

The judgment of the trial court is affirmed.