C. K. GRAVIS, Jr., et ux., Petitioners,

v.

PHYSICIANS AND SURGEONS HOS-
PITAL OF ALICE et al., Respondents.

No. B–379.

Supreme Court of Texas.

April 3, 1968.

Rehearing Denied May 22, 1968.

Sidney P. Chandler, Trimble & Dobbs, J. B. Trimble, Corpus Christi, for petitioners.

Lloyd, Lloyd, Dean & Ellzey, Homer E. Dean, Jr., Alice, Lewright, Dyer & Redford, Eldon Dyer, Corpus Christi, Perkins, Floyd, Davis & Oden, Kenneth Oden, Alice, for respondents.

WALKER, Justice.

This a malpractice suit instituted by C. K. Gravis, Jr., and wife, Elma Gravis, petitioners, against Physicians and Surgeons Hospital of Alice, Dr. Philip S. Joseph, Dr. J. C. Turnham and Mrs. Ruth Grose, respondents. The trial court rendered a summary judgment for respondents, and the Court of Civil Appeals affirmed. 415 S.W.2d 674. We reverse the judgments of the courts below and remand the cause to the district court.

On the evening of October 22, 1963, Mrs. Gravis complained of pain in her abdomen. Her husband telephoned Dr. Joseph, who agreed to and did meet them at the Physicians and Surgeons Hospital of Alice, a corporation, hereinafter referred to as the hospital. Dr. Joseph examined Mrs. Gravis in the emergency room of the hospital. This initial examination revealed generalized tenderness in the abdominal area but did not enable the doctor to reach any conlcusion as to the probable cause of the patient's complaints. Mrs. Gravis was given medicine for pain and placed in a room in the hospital for observation. The following day she was given other examinations and tests. According to Dr. Joseph, the X-rays taken at that time showed a normal abdomen with no pathology indicated.

The situation had changed by the morning of October 24th. Mrs. Gravis' blood count was up, and X-rays taken that morning showed some dilation of the small intestine. Dr. Joseph then concluded for the first time that an exploratory operation was necessary. He performed the operation at about 12:30 o'clock p.m. the same day. Dr. Turnham was the assisting physician, and

Mrs. Grose, who was employed by the hospital as anesthetist and supervisor of nurses, administered the spinal anesthetic and the pentathol sodium which Mrs. Gravis was given during the operation. An intestinal obstruction was found and corrected, but Mrs. Gravis has since suffered from a number of physical disabilities, including bladder trouble, phlebitis of the left leg, and partial paralysis.

■ Petitioners seek to establish liability upon a number of different theories, including: (1) assault and battery, (2) fraud, (3) breach of duty to warn, (4) breach of contract, and (5) negligence. We consider only the first of these theories. Before the operation was performed, Dr. Joseph discussed Mrs. Gravis' condition with her husband. Mr. Gravis consented in writing to the performing of whatever treatment or operation, and the administering of whatever anesthetics, the physician believed to be necessary or desirable. There is no contention, however, that Mr. Gravis was authorized by his wife to consent in her behalf, and the relationship of husband and wife does not in itself make one spouse the agent of the other.

Mrs. Gravis did not give her consent in writing, and the summary judgment proofs show a dispute as to whether she consented orally. According to the affidavits and deposition testimony of Dr. Joseph and Mrs. Grose, the operation and the anesthetics to be used were fully explained to Mrs. Gravis at about 11:00 o'clock a.m. on October 24th, and the patient then gave her consent to the operation and the anesthetic. This is categorically denied by Mrs. Gravis in her affidavit. She there states that Dr. Joseph never advised her that an operation was necessary and never discussed the anesthetic with her; that she did not consent to the operation or to the use of a spinal anesthetic; that she had refused to take a spinal anesthetic in connection with another operation performed in 1956, because two previous spinals had caused her to suffer severe headaches for several weeks; and that if

spinal anesthetic had ever been mentioned by Dr. Joseph, she would have refused to take it.

■ The Court of Civil Appeals reasoned that Mrs. Gravis' consent was not necessary because an emergency existed and she was under the influence of drugs to such an extent that she was incapable of giving consent. We recognize the rule that consent will be implied where the patient is unconscious or otherwise unable to give express consent and an immediate operation is necessary to preserve life or health. In the absence of exceptional circumstances, however, a surgeon is subject to liability for assault and battery where he operates without the consent of the patient or the person legally authorized to give such consent. See Moss v. Rishworth, Tex.Com.App., 222 S. W. 225; Annotations, 76 A.L.R. 562; 139 A.L.R. 1370; 10 Tex.L.Rev. 99, and authorities there cited. Our problem then is to determine whether the summary judgment proofs establish a case of implied consent as a matter of law.

■ Certain parts of the affidavit and deposition testimony of Mrs. Gravis tend to support the conclusion of the Court of Civil Appeals that she was unable to give her consent after Dr. Joseph decided that an operation was necessary. When the deposition was taken, she did not remember anything that occurred the morning of October 24th. She stated in her affidavit that she was under pain relieving medicine to such an extent that she did not know what was happening about 80 per cent of the time prior to the operation; that if Dr. Joseph and Mrs. Grose were in her room tegether the morning of the operation, she was so heavily sedated that she did not know they were there; and that if Dr. Turnham was present, she was under sedation to the extent that she did not know him and could not have talked to him. Evidence of this nature, if offered at the trial, would also serve to discredit any testimony by Mrs. Gravis that Dr. Joseph never discussed the operation with her and that she did not give

her consent. The statements referred to cannot be given conclusive effect, however, because the other summary judgment proofs indicate that Mrs. Gravis was in full possession of her mental faculties and quite capable of giving or withholding consent for some time before she was taken to the operating room.

If we accept as true the portions of the affidavits and depositions of Dr. Joseph, Dr. Turnham and Mrs. Grose that are favorable to petitioners, it appears that Dr. Joseph visited Mrs. Gravis in her room on at least two occasions after he decided that an operation was necessary. Dr. Turnham was present during one of these visits. The second visit was at about 10:30 or 11:00 o'clock in the morning, and Mrs. Grose was present at that time. On this occasion "Mrs. Gravis was calm and in full possession of her mental faculties and she was not under any sedation that did or could have affected her mental faculties." "She was perfectly normal and lucid at the time." In the opinion of Dr. Turnham, "she was lucid" when he saw her. The affidavit of Mrs. Grose states that the hospital chart showed the patient had had no sedation or tranquilizer since 11:00 o'clock p.m. the previous night.

On the question of emergency, Dr. Joseph's affidavit makes it clear that he decided "early" on the morning of October 24th that an operation was necessary. As previously indicated, she was not taken into surgery until about 12:30 o'clock p.m. In the meantime Dr. Joseph made his two visits to her room and performed at least one other operation. Dr. Turnham states that although he and Dr. Joseph agreed when they saw Mrs. Gravis that it was now time to operate, "there was no dire emergency, and she was operated as soon as the operating room was available." He explained that by the word "dire" he meant "immediate." It thus appears that there was ample time to discuss the operation with Mrs. Gravis and give her an opportunity to consent to or refuse the same.

In our opinion the record does not conclusively establish circumstances that would justify an operation without the patient's consent. Since there are material and disputed issues of fact to be resolved in disposing of petitioners' claim that respondents are liable for assault and battery, the cause must be remanded for a conventional trial. We do not attempt to discuss petitioners' other theories, because the evidence introduced at the trial may be different from that found in the present record. The hospital insists that it is not subject to vicarious liability. It argues that neither of the doctors was its agent and that Mrs. Grose was the borrowed servant of Dr. Joseph. That question should be decided after the relevant facts have been fully developed.

At one time Abbot Laboratories was named as a defendant in this case, and Sterling Drug, Inc., attempted to intervene. A summary judgment was rendered in favor of Abbot Laboratories, and the plea in intervention of Sterling Drug, Inc., was dismissed. The action of the trial court in these respects is reflected by the final judgment, and no complaint with reference thereto was made on appeal. All claims and causes of action asserted by petitioners against respondents are accordingly severed, and as to this part of the case the judgments of the courts below are reversed and the cause is remanded to the district court. The judgment of the Court of Civil Appeals, in so far as it affirms the judgment of the trial court in favor of Abbot Laboratories and the action of the trial court in dismissing the plea in intervention of Sterling Drug, Inc., is affirmed.