C. K. GRAVIS, Jr., et ux., Appellants,

v.

ABBOTT LABORATORIES et al.,
Appellees.

No. 546.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 30, 1970.

Two Motions for Rehearing Denied
Jan. 28, 1971.

Sidney P. Chandler, Corpus Christi, for appellants.

Allison, Maddin, White & Brin, Ronald Brin, Corpus Christi, for Winthrop Labs. and Sterling Drugs.

Perkins, Davis, Oden & Warburton, Kenneth Oden, Alice, for Abbott Labs.

SHARPE, Justice.

## OPINION

This appeal is from a summary judgment that plaintiffs C. K. Gravis, Jr., and wife, Elma Gravis, appellants here, take nothing against the defendants Abbott Laboratories, Incorporated, Parke, Davis & Company, a corporation, Winthrop Laboratories, Inc., and Sterling Drug, Inc., appellees here.

This is a drug products liability case arising out of medical treatment received by Elma Gravis while she was a patient in the Physicians and Surgeons Hospital of Alice, Texas, on October 24, 1963. Plaintiffs filed a motion for partial summary judgment which was overruled by the court. The motions of all defendants for summary judgment in their favor was granted.

Appellants assert four points of error. The first two points complain of the granting of defendants' motions for summary judgment. Point three asserts that the trial court erred in sustaining objections and motions to quash directed to plaintiffs' requests for admissions by Abbott Laboratories, Parke, Davis & Co., and Winthrop Laboratories; but that point has not been briefed and will not be further considered. Point four complains of the refusal of the trial court to sustain plaintiffs' motion for partial summary judgment.

Prior to filing of the instant case, plaintiffs on September 28, 1964 brought a malpractice suit in the district court of Jim Wells County, Texas, against defendants other than those in this products liability case with the exception of Abbott Laboratories, Incorporated, whose position with reference to the prior suit will hereafter in some respects be separately considered. In the Jim Wells County suit, the trial court rendered summary judgment for all of the defendants, which was affirmed by the San Antonio Court of Civil Appeals. Gravis v. Physicians & Surgeons Hospital of Alice, 415 S.W.2d 674. The Supreme Court of Texas on April 5, 1967 reversed the judgments of the lower courts and remanded the case for conventional trial except as to Abbott Laboratories and Sterling Drug, Inc. As to Abbott the summary judgment was affirmed. As to Sterling the dismissal of its petition in intervention was affirmed. Gravis v. Physicians & Surgeons Hospital of Alice, 427 S.W.2d 310. The Jim Wells County case was thereafter settled by the defendants in that case (except Abbott) paying plaintiffs $75,625.00 and the suit was dismissed with prejudice on January 24, 1969. The instant suit was filed in the district court of Nueces County, Texas, on October 18, 1965 and after settlement of the prior suit was activated.

The factual background of plaintiffs' suits is set out in the above-mentioned reported decisions in the Jim Wells County case except that plaintiffs' drug product liability claims based upon strict liability in tort were not there involved. The introductory statement of the Supreme Court appearing at 427 S.W.2d 310, 311 is in part as follows:

"This a malpractice suit instituted by C. K. Gravis, Jr., and wife, Elma Gravis, petitioners, against Physicians and Surgeons Hospital of Alice, Dr. Philip S. Joseph, Dr. J. C. Turnham and Mrs. Ruth Grose, respondents. The trial court rendered a summary judgment for respondents, and the Court of Civil Appeals affirmed. 415 S.W.2d 674. We reverse the judgments of the courts below and remand the cause to the district court.

"On the evening of October 22, 1963, Mrs. Gravis complained of pain in her abdomen. Her husband telephoned Dr. Joseph, who agreed to and did meet them at the Physicians and Surgeons Hospital of Alice, a corporation, hereinafter referred to as the hospital. Dr. Joseph examined Mrs. Gravis in the emergency room of the hospital. This initial examination revealed generalized tenderness in the abdominal area but did not enable the doctor to reach any conclusion as to the probable cause of the patient's complaints. Mrs. Gravis was given medicine for pain and placed in a room in the hospital for observation. The following day she was given other examinations and tests. According to Dr. Joseph, the X-rays taken at that time showed a normal abdomen with no pathology indicated.

"The situation had changed by the morning of October 24th. Mrs. Gravis' blood count was up, and X-rays taken that morning showed some dilation of the small intestine. Dr. Joseph then concluded for the first time that an exploratory operation was necessary. He performed the operation at about 12:30 o'clock p. m. the same day. Dr. Turnham was the assisting physician, and Mrs. Grose, who was employed by the hospital as anesthetist and supervisor of nurses, administered the spinal anesthetic and the pentathol sodium which Mrs. Gravis was given during the operation. An intestinal obstruction was found and corrected, but Mrs. Gravis has since suffered from a number of physical disabilities, including bladder trouble, phlebitis of the left leg, and partial paralysis."

The summary judgment record in this case is voluminous. It contains over five hundred pages, including the transcript herein and the pleadings, affidavits and exhibits which have been brought forward from the Jim Wells County case. In the interest of desired brevity we must necessarily omit many details, particularly those relating to the medical aspects of the matter which might throw additional light on the case.

In the instant case the plaintiffs' asserted cause of action is in substance that Mrs. Gravis sustained personal injuries produced by the injection into her of a spinal anesthetic composed of novocaine and dextrose manufactured and sold by the defendants Winthrop Laboratories, Inc. and Sterling Drug, Inc., and adrenalin manufactured and sold by Parke, Davis & Co., which spinal anesthetic was supplemented by the intravenous injection of pentothal sodium (in a saline solution) manufactured and sold by Abbott Laboratories, Incorporated. Plaintiffs' cause of action is primarily based upon the theory of strict liability in tort as stated in Section 402A of the American Law Institute Restatement of the Law of Torts (2d Ed.) as adopted by the Texas Supreme Court.

The rule of "strict liability" as to non-food or consumable products was adopted by the Texas Supreme Court in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.1967). The Court based its decision on the provisions of Section 402A of the Restatement of the Law—Torts, Second. In the more recent case of Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W. 2d 546 (Tex.Sup.1969), involving the alleged explosion of a defective coca-cola bottle, the Supreme Court in discussing the development of the rule in Texas said:

"This court has not heretofore applied the rule of strict liability in exploding bottle cases. Indeed, our approach to use of the rule for imposing liability on sellers of products has been gradualistic and marked with caution. Some twenty-seven years ago, we adopted the rule as a means of fixing liability on manufacturers and packagers of food products for human consumption, Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942), and on retail purveyors thereof, Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424 (1942); but a decade later,

we questioned the wisdom of applying the rule to retailers of food products, canned or packaged by others, and we refused to apply it to wholesalers of such products. Bowman Biscuit Co. of Texas v. Hines, 151 Tex. 370, 251 S.W.2d 153 (1952). Then, in 1956, with the question squarely presented, we refused to grant a writ in Brown v. Howard, 285 S.W.2d 752 (Tex. Civ.App.—San Antonio, 1956, writ ref'd n. r. e.), and thus refused, to apply the rule to a manufacturer of a spray causing harm when used on the plaintiff's cattle.

In 1967, we finally yielded to the irrefutable logic that the rule of strict liability is the only practical vehicle for protecting the public against harm so often encountered by innocent users and consumers of defective products. We abruptly changed direction. In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex. Sup.1967), we applied the rule against a distributor of a permanent wave lotion which proved harmful when applied to a woman's hair and scalp. In that case, we committed the court to the rule of strict liability expressed in Section 402A of the American Law Institute's Restatement of the Law of Torts (2d Ed.) as applicable to all persons engaged in the business of selling who sell a product in a defective condition which renders it unreasonably dangerous to a user or consumer or to his property. The necessary effect of *McKisson* was to disapprove prior contrary expressions of the law as announced in Bowman Biscuit Co. v. Hines, supra, and Brown v. Howard, supra. Thereafter, we expressly disapproved Brown v. Howard, and approved a holding of a court of civil appeals that a seller of a defective product is 'subject to strict liability for damage caused to the property of the ultimate consumer.' [O. M.] Franklin Serum Co. v. C. A. Hoover & Son, 418 S.W.2d 482 (Tex. Sup.1967). More recently, we have extended the rule to sellers of defective products which cause harm to non-users and non-consumers. Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.1969). We perceive no sound reason why the rule should not be applied to bottlers.

The prime requirement for imposing liability on a seller under the rule of strict liability is proof by the plaintiff that he was injured because of a defective condition in the product when it left the hands of the particular seller. Jack Roach-Bissonnet, Inc. v. Puskar, 417 S.W.2d 262, at 278 (Tex.Sup.1967). This is not to say that proof of the defect must be made by direct or opinion evidence; it usually can only be made by circumstantial evidence. As an example, see Darryl v. Ford Motor Co., supra."

It thus appears that the rule of "strict liability" as it applies in Texas is that set forth in Section 402A of the Restatement of the Law of Torts, Second Edition, which reads as follows:

"TOPIC 5. STRICT LIABILITY

§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The parties have cited a number of products liability decisions by Texas Courts and some from other jurisdictions, particularly by Federal Courts of Appeals. We believe that discussion of many of these cases is unnecessary, since disposition of the case turns primarily on Section 402A of said Restatement and Rule 166–A, T.R.C.P., both as construed by our Texas Supreme Court.

The applicable summary judgment rules are summarized by our Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.Sup.1965). Such rules have been tabulated, omitting citation of cases, by the Beaumont Court of Civil Appeals in Le Tulle v. McDonald, 444 S.W.2d 794, 795 (Tex.Civ.App., 1969, wr. ref. n. r. e.) as follows:

" 'Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(a) 'The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. * * *

(b) '* * * the evidence must be viewed in the light most favorable to the party opposing the motion. * * *

(c) 'If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted.

(d) 'All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. * * *

(e) 'Evidence which favors the movant's position is not considered unless it is uncontradicted.

(f) 'If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, *unless* it is clear, direct and positive *and* there are no circumstances in evidence tending to discredit or impeach such testimony. * * *

(g) 'This exception (Subdiv. (f), supra) is especially true where the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. * * *

(h) 'After all the evidence has been sifted in this manner, the Court must determine whether the movant is entitled to a judgment as a matter of law.' "

Recent Supreme Court decisions have reiterated these rules and have emphasized the nature of the burden which the movant must discharge in a summary judgment case. See Torres v. Western Casualty and Surety Company, 457 S.W.2d 50 (Tex.Sup. 1970); Glenn v. Prestegord, 456 S.W.2d 901 (Tex.Sup.1970); Harrington v. Y. M. C. A. of Houston, 452 S.W.2d 423 (Tex. Sup.1970); Gibbs v. General Motors Corporation, 450 S.W.2d 827 (1970).

There is no real controversy as to whether appellees were engaged in the business of selling and that they sold the products in question. Other essential elements of plaintiffs' cause of action which must be discussed are:

(1) Whether the product (one or more) used in the anesthetics was in a defective condition unreasonably dangerous to the user or consumer, when it left the hands of the particular seller. (2) Whether the products used in the anesthetics caused physical harm to Mrs. Gravis, including the question of abreaction. (3) Whether each of the products used was expected to and did reach the user or consumer without substantial change in the condition in which it was sold.

■ A complete review of the record herein leads to the conclusion that the summary judgment evidence does not establish as a matter of law that there is no genuine

issue of fact as to any of such issues. Under Rule 166–A, T.R.C.P., the defendants were not entitled to judgment as a matter of law.

We now specifically consider whether the summary judgment evidence herein establishes as a matter of law that there was no genuine issue of fact as to whether the products used in the anesthetics were in a defective condition unreasonably dangerous to the user or consumer when they left the hands of the sellers.

We recognize the rule stated in *McKisson* that "* * * When it is shown that the product involved comes in a sealed container, it is inferable that the product reached the consumer without substantial change in the condition in which it was sold. * * *" However, in this case the evidence concerning the products relates only to their receipt in sealed containers by the hospital at Alice, Texas and their use afterward in connection with the operation performed on Mrs. Gravis. There is no evidence concerning the condition of the products prior to that time. In this situation, the above-stated rule is not helpful to the defendants. The evidence here is to the effect that the doctors and employees of the hospital at Alice, Texas, particularly the anesthetist, assumed the purity and proper composition of the products used in the anesthetics, and there is testimony to the effect that there was no satisfactory method of testing them at the hospital. There is no evidence in the record as to whether there was a miscarriage in the manufacturing process or as to the presence of foreign substances in the products at the time they left the hands of the sellers.

An essential element of the plaintiff's case under the rule of strict liability in tort as applicable to products which cause physical harm to persons is that he was injured because the product was in a defective condition when it left the hands of the particular seller. Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex. Sup.1969). Under summary judgment rules the burden was upon the movants for summary judgment to establish as a matter of law that there was no genuine issue of fact in such respect. We hold in this case that the appellees did not discharge their burden as to the issue of whether a defect in the product of each appellee existed when in each instance it left the hands of the respective seller. The summary judgment for appellees cannot be sustained on the basis that the record establishes as a matter of law that there was no genuine issue of fact concerning the condition of each product or whether there was a defect therein in each instance rendering it unreasonably dangerous to the user or consumer.

We next consider specifically whether the summary judgment evidence establishes as a matter of law that there was no genuine issue of fact as to whether the products used in the anesthetics caused physical harm to Mrs. Gravis, including the question of abreaction. The summary judgment evidence is legally sufficient to establish that the disabilities suffered by Mrs. Gravis (or, at least some of them) resulted from the anesthetics administered to her during the operation. It is plaintiffs' position in the instant suit that the anesthetics were properly administered at the hospital by those concerned with the operation and that the products used in the anesthetic were toxic or poisonous. In this respect plaintiffs' position is supported by affidavits of several doctors that Mrs. Gravis' injury was of toxic origin. However, the summary judgment record also contains opinion evidence by doctors to the effect that injuries such as those suffered by Mrs. Gravis may result from an unpredictable and unavoidable abreaction or allergy that is not known to occur in an appreciable number of persons. Appellees contend that the summary judgment evidence thus conclusively establishes that plaintiffs cannot recover on their asserted cause of action.

Two of the cases relied on by appellees in connection with their abreaction defense are Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640 (Tex.Civ.App., Dallas, 1965,

wr. ref. n. r. e.), and Alberto-Culver Company v. Morgan, 444 S.W.2d 770 (Tex.Civ. App., Beaumont, 1969, wr. ref. n. r. e.). In *Cudmore*, the jury found among other things, that plaintiff's cataracts were the result of abreaction as that term was defined in the court's charge. The Court of Civil Appeals there affirmed the trial court judgment that plaintiff take nothing on the verdict. In Alberto-Culver Company v. Morgan, supra, the Court of Civil Appeals, in reversing a judgment for plaintiffs rendered after conventional jury trial, held among other things that the plaintiffs had failed to show that Mrs. Morgan was within the class of persons to which the seller of the product owed any duty. The definition of "abreaction" therein submitted to the jury was as follows:

"'Abreaction', as used herein, means an unusual reaction resulting from a person's unusual susceptibility to the product or intended effect of the product in question; that is, such person's reaction is different in the presence of the product in question from that in the usual person. An abreaction is one in which an unusual result is produced by a known or theoretical mechanism of the action. An abreaction is one which could not have been reasonably foreseen in an appreciable class or number of potential users prior to April 14, 1965."

The discussion and holdings in *Cudmore, Morgan* and similar cases wherein conventional trials were held are not controlling in the instant case. Here we are not dealing with a conventional trial, a jury or court finding of fact, a motion for directed verdict, a motion to disregard findings or for judgment non obstante veredicto. Instead, we are considering a summary judgment that plaintiffs take nothing. Appellees' defense of abreaction, including its various factors, depends at least in part on opinion evidence. Opinion testimony of the character necessarily here involved does not establish facts as a matter of law in support of the summary judgment. See Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970); Gloor v. United States Fire Insurance Company, 457 S.W.2d 925 (Tex.Civ.App., Beaumont, 1970, n. w. h.). Additionally, there is no direct evidence in the record that Mrs. Gravis was allergic to any part of the anesthetics administered to her or that her reactions resulted from her unusual susceptibility to the products used or their intended effect. At best, there was opinion evidence only in connection with such matters. Here again, only fact issues were presented and appellees did not under summary judgment rules discharge their burden to conclusively establish the absence of genuine issues on the subjects of physical harm and abreaction.

We next consider specifically the question of whether the products used in the anesthetics were expected to and did reach the user or consumer without substantial change in the condition in which they were sold. There is evidence in the summary judgment record which tends to show that the mixture of the products involved was intended, including those used in the spinal anesthetic as well as the pentothal sodium, and that the technique and procedure followed in administering the anesthetics was standard and had been used over a long period of time, and that each product served its intended use. Appellees rely in part on the case of Helene Curtis Industries, Inc. v. Pruitt (5 C.A.1967) 385 F.2d 841, wherein hair bleaching products were involved. There the court held in part that "all the relevant decisions presented evince a hesitancy to hold the maker responsible when mixtures are involved." But the court also said in part:

"* * * What these decisions justifiably demand is that there be a rational basis in the record from which the jury can make a selective choice between the products before the manufacturer can be held responsible for the harm caused by his product or the mixture. See Bathory v. Procter & Gamble Distributing Co., 6th Cir. 1962, 306 F.2d 22; Sheptur v. Procter & Gamble Distributing Co., 6th Cir. 1958, 261 F.2d 221; Harrod et al.

v. Edward E. Tower Co., 346 Mass. 532, 194 N.E.2d 392 (1963). This requirement is all the more warranted when the products involved were never meant to be used together. *Unlike the case of Ozark v. Wichita Manor, Inc., 5th Cir. 1958, 252 F.2d 671, in which component parts were used to produce a final product, it is clear in the instant case that the products involved were not marketed for that purpose.* (Emphasis supplied.)

In the instant case there is summary judgment evidence to the effect that as to the spinal anesthetic the component parts were intended to be and were used to make a final product and that the pentothal sodium was intended to be and was used to supplement the final anesthetic product. It also appears that those who did the mixing and administered the anesthetics to Mrs. Gravis were professionals. It thus again appears that the summary judgment evidence does not establish as a matter of law that there was no genuine issue of fact concerning whether the products used in the anesthetics were expected to and did reach the ultimate consumer without substantial change in the condition in which they were sold, or that the mixture of the products would furnish a proper basis for the summary judgment in favor of the defendants under the conditions existing here.

■■ One of the contentions raised by appellee Abbott Laboratories in support of the summary judgment in its favor is that the judgment in the Jim Wells County suit, heretofore mentioned, is res judicata and precludes recovery by plaintiffs in the instant Nueces County case. The summary judgment record herein apparently contains all of the record in the Jim Wells County case, which was ultimately settled. That case was not a products liability case but instead, as between Mr. and Mrs. Gravis and Abbott involved only the question of negligence. In the Jim Wells County case plaintiffs' original petition alleged in substance that the drug used in the *spinal anesthetic*, the name or classification of which was not known to plaintiffs, was furnished to the hospital at Alice by Abbott Laboratories and the concentration of it was excessive and that Abbott was negligent in such respect. Abbott filed a motion for summary judgment based solely on the contention in substance that it had not manufactured, sold, furnished or delivered the drugs described in plaintiffs' original petition "used in connection with the spinal anesthesia." The motion was supported by the affidavits of Ruth Grose, the nurse and anesthetist at the hospital and that of J. Quentin Smith, the agent of Abbott for the Corpus Christi, Kingsville, Alice and Robstown areas. The summary judgment in the Jim Wells County case in favor of Abbott thus rested solely on the ground stated, that is, that Abbott had not manufactured or furnished the medicine or drugs used as a part of the *spinal anesthetic*. Plaintiffs apparently discovered that the pentothal sodium manufactured and sold by Abbott was used in a saline solution as a supplement to the spinal anesthetic but not in the spinal anesthesia which was composed of novocaine and dextrose (Winthrop & Sterling) and adrenalin (Parke, Davis & Co.), and included allegations to such effect in their first amended original petition in the Jim Wells County suit. Abbott then filed a motion to dismiss plaintiffs' first amended original petition as to it, which was ultimately granted. The final judgment in the Jim Wells County suit recited the rendition of the summary judgment in favor of Abbott and that plaintiffs' motion for new trial concerning it was overruled. The final judgment also recited that the motion of Abbott to dismiss it as a party to the suit was also granted. It is well established that a prior judgment between the parties cannot operate as a bar to a subsequent suit unless the subject matter of the second suit is the same as was that of the first. Identity of the causes of action is indispensable to the operation of a judgment as a bar to a subsequent suit between the parties. See 34 Tex.Jur.2d, Judgments, Sections 493, 494 and cases therein cited. The summary

judgment evidence in this case supports appellants' position that the products liability cause of action here asserted against Abbott is not the same as that involved in the Jim Wells County case.

Under applicable summary judgment rules we cannot hold that the judgment in the Jim Wells County case is res judicata as to the cause of action asserted by plaintiffs in the instant (Nueces County) case. We cannot say that it is conclusively established that there is an absence of material issues of fact in connection with Abbott's plea of res judicata and that Abbott would be entitled to summary judgment in its favor on such basis on the record here presented. However, our holding in such respect is not to be construed as affecting Abbott's right to assert its contentions concerning res judicata on the new trial of the case.

Appellants' points one and two are sustained.

Appellants' point four asserts that the trial court erred in refusing to sustain their motion for partial summary judgment. Plaintiffs' motion for partial summary judgment sought to have the trial court limit the issues in this case to (1) whether the anesthetics, one or all, received by Mrs. Gravis were a proximate cause of her injuries, and (2) the amount of the damages, thereby eliminating determination herein (by the fact finder in this case) of the question of whether the medicines administered to Mrs. Gravis as anesthetics were mishandled or improperly handled by the doctors, nurses and anesthetists who helped perform the operation on Mrs. Gravis.

The basis of plaintiffs' motion for partial summary judgment is stated by them to be the doctrine of stare decisis. Plaintiffs argue in substance that in the Jim Wells County case, it was judicially determined that there was no evidence of malpractice or negligence on the part of the defendants in that suit in administering the anesthetics to Mrs. Gravis. Plaintiffs further say that

it was undisputedly established therein that the products used in the spinal anesthetic administered to Mrs. Gravis, composed of novocaine, adrenalin and dextrose, were received by the hospital from the manufacturers, Parke, Davis & Co. and Winthrop Laboratories, Inc., and Sterling Drug Inc., in sealed ampules and immediately administered to Mrs. Gravis as a spinal anesthetic without substantial change in the condition in which such anesthetics were sold by the defendants. Plaintiffs further say that in the Jim Wells County suit it was also conclusively established that during the time that the operation on Mrs. Gravis was in progress, she was administered intravenously pentothal sodium, manufactured by Abbott Laboratories, which was received by the hospital in sealed containers and administered without substantial change in the condition in which it was sold by Abbott. Plaintiffs' motion for partial summary judgment further asserted that Winthrop and Sterling manufactures and sells novocaine and dextrose; that Parke, Davis & Co. manufactures and sells adrenalin; that Abbott manufactures and sells pentothal sodium; that said anesthetics received by Mrs. Gravis on October 24, 1963 were in a defective condition, either jointly or severally, unreasonably dangerous to the consumer, Mrs. Gravis, and did her physical harm, thereby bringing about permanent injury.

Analysis of the opinion and judgment of the Supreme Court in the Jim Wells County case shows that plaintiffs' contentions concerning their motion for partial summary judgment are without merit. The Supreme Court there held in part as follows:

"Petitioners seek to establish liability upon a number of different theories, including: (1) assault and battery, (2) fraud, (3) breach of duty to warn, (4) breach of contract, and (5) negligence. We consider only the first of these theories." 427 S.W.2d 311.

\* \* \* \* \* \*

"In our opinion the record does not conclusively establish circumstances that would justify an operation without the patient's consent. Since there are material and disputed issues of fact to be resolved in disposing of petitioners' claim that respondents are liable for assault and battery, the cause must be remanded for a conventional trial. We do not attempt to discuss petitioners' other theories, because the evidence introduced at the trial may be different from that found in the present record. \* \* \*" 427 S.W.2d 312.

The ultimate holding of the Supreme Court in the Jim Wells County case was that the presence of material and disputed issues of fact involved in plaintiffs' claim that respondents in that case were liable for assault and battery precluded a take-nothing summary judgment against plaintiffs, which gave rise to a reversal of the summary judgment and remand for a conventional trial. Plaintiffs' contentions that certain facts were conclusively established by the disposition of the Jim Wells County case and that only the issues of proximate cause and damages remain for determination in this case are not well taken. Appellants' point four is overruled.

We express no opinion as to whether on a conventional trial the evidence disclosed by the present summary judgment record would or would not support findings on the essential elements of liability in favor of plaintiffs. We simply hold that the defendants-appellees did not carry their burden of establishing as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiffs' cause of action and that they were entitled to judgment as a matter of law under Rule 166–A, T.R.C.P.

The judgment of the trial court will be reversed and the cause remanded for trial.

NYE, Justice (concurring).

The summary judgment evidence viewed in the light of the rules relative to the treatment of such evidence, raises disputed issues of material fact that should be submitted to a jury for determination. It is for this reason that I agree that this case must be reversed and remanded for trial.