**L. A. McKISSON, Petitioner,**

v.

**SALES AFFILIATES, INC., Respondent.**

**No. A–11814.**

Supreme Court of Texas.

June 7, 1967.

Dissenting Opinion June 21, 1967.

Rehearing Denied July 5, 1967.

788

Merchant & Barfield, Wayne B. Barfield, Amarillo, W. James Kronzer, Houston, for petitioner.

Simpson, Adkins, Fullingim & Hankins, John D. Curtis, Amarillo, for respondent.

NORVELL, Justice.

Section 402A of the American Law Institute's Restatement of the Law of Torts (2d Ed.), hereinafter referred to as the Torts Restatement, reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

■ Insofar as foodstuffs for human consumption are concerned, this section states the law as followed in Texas. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942). We are further of the opinion that as a logical proposition, the rule stated in *Decker* should be held applicable to defective products which cause physical harm to persons. As pointed out by the concurring justice in the Court of Civil Appeals, no sound distinction can be drawn between the use of an eye-wash solution that impairs or destroys vision and a foodstuff which causes illness. (408 S.W.2d 124, 1. c. 128).[1]

In Comment (a) under Section 402A of the Torts Restatement, it is said:

"This Section states a special rule applicable to sellers of products. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. * *. * The rule stated here is not exclusive, and does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved."

In *Decker,* this court said:

"While a right of action in such a case is said to spring from a 'warranty,' it should be noted that the warranty here referred to is not the more modern contractual warranty, but is an obligation imposed by law to protect public health. According to Prof. Williston the law of warranty is older by a century than the action of special assumpsit, from which the modern law of contracts developed. 1 Williston on Sales, p. 368, § 195; Jeanblanc, 'Manufacturer's Liability to Persons Other Than Their Immediate Vendees,' 24 Va.L.Rev. 134, 158, at p. 148. The action on a warranty sounded in tort was in the nature of an action on the case for deceit, although it was not necessary to plead or prove scienter. 1 Williston on Sales, p. 371."

There is an extensive literature concerning the history and nature of the so-called rule of strict liability. Concededly, the doctrine is one of comparatively recent and rapid development. We need not here reiterate its history. Cited in the margin are those authorities and treatises deemed most important and persuasive in bringing the doctrine to its present status.[2]

---

1. Other cases contain similar expressions, such as, "[W]e see no rational doctrinal difference to justify any distinction between an upset stomach caused by a fly in a coke and a broken leg caused by a weak axle of a wheel chair". Putman v. Erie City Manufacturing Company, 338 F.2d 911 (5th Cir. 1964). See also, Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960).

2. Mazetti v. Armour & Co., 75 Wash. 622, 135 P. 633, 48 L.R.A.,N.S., 213 (1913), discussed in 19 Sw.L.J. 5, 11; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); Putman v. Erie City Mfg. Co., 338 F.2d 911 (5th Cir. 1964) [This opinion contains an elaborate citation and review of Texas and American authorities, noted in 19 Sw.L.J. 198 (1965)]; B. F. Goodrich Co. v. Hammond, 269 F.2d 501 (10th Cir. 1959); Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436 (1944); Picker X-ray Corp. v. General Motors Corp., 185 A.2d 919 (D.C.Municipal Ct.App.1962), noted in 5 Ariz.L.Rev. 306 (1964); Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965); Kroger Co. v. Bowman, Ky., 411 S.W.2d 339 (1967); State Stove Mfg. Co. v. Hodges, Miss., 189 So.2d 113 (1966); Shoshone Coca-Cola Bottling Co. v. Dolinski, Nev., 420 P.2d 855 (1966); Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963); 2 Frumer & Friedman, Products Liability, § 16 (1966); Prosser, Torts, § 97 (3d Ed. 1964); Freedman, Defect in the Product: the Necessary Basis for Product Liability in Tort and

■ We are further in agreeemnt with the Torts Restatement rule relating to contributory negligence as a defense to an action based upon strict liability, viz:

> "Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. * * *" § 402A, Comment (n), Contributory Negligence.

■ The rules above stated control the disposition of this case. The product involved is a permanent wave preparation known as "Zotos Lanolin Bath". L. A. McKisson brought suit against Sales Affiliates, Inc., the distributor [3] of the Zotos preparation, for damages sustained by his wife, Ellen McKisson, as a result of her using the lotion. Mrs. McKisson owned a beauty shop in Amarillo, Texas and on April 13, 1965, one of her employees gave her a permanent wave treatment using the Zotos lotion. Shortly after said permanent treatment was completed, substantial amounts of Mrs. McKisson's hair fell out and burns of the face and scalp became apparent. The cause was tried to a jury which found that:

The Zotos preparation was not reasonably fit for the purpose of giving permanent waves; Ellen McKisson was damaged as a result of using such product for a permanent wave; the use of the product was the proximate cause of the damages sustained by Ellen McKisson; Sales Affiliates, Inc. failed to provide adequate directions for the use of Zotos preparation; such failure was negligence; such negligence was the proximate cause of Mrs. Kisson's injuries; Zotos preparation should not be applied to bleached hair; a reasonably prudent beauty operator in the exercise of ordinary care would have known that the wave lotion should not be applied to bleached hair; the application of the Zotos preparation to Ellen McKisson's hair was negligent; such negligence was a proximate cause of the damages sustained by Mrs. Kisson; and $1,000.00 would fairly and reasonably compensate the plaintiff, L. A. McKisson for the injuries sustained by his wife in using the Zotos preparation. The trial court rendered judgment for the plaintiff upon the jury's findings. The Court of Civil Appeals reversed and rendered judgment that plaintiff take nothing. 408 S.W.2d 124.

in Warranty, 33 Tenn.L.Rev. 323 (1966); James, General Products—Should Manufacturers Be Liable Without Negligence? 24 Tenn.L.Rev. 923 (1957); James, Products Liability, 34 Texas L.Rev. 192 (1955); Keeton, Products Liability— Some Observations About Allocation of the Risk, 64 Mich.L.Rev. 1329 (1966); Keeton, Products Liability—Liability Without Fault and the Requirement of a Defect, 41 Texas L.Rev. 855 (1963); Keeton Products Liability—Current Developments, 40 Texas L.Rev. 193 (1961); Lascher, Strict Liability in Tort for Defective Products, 38 So.Calif.L.Rev. 30 (1965); Noel, Manufacturers of Products—The Drift Toward Strict Liability, 24 Tenn.L.Rev. 963 (1957); Percy, Products Liability—Tort or Contract or What, 40 Tul.L.Rev. 715 (1966); Prosser, The Attack Upon the Citadel, 69 Yale L.J. 1099 (1960); Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791 (1966); Traynor, The Ways and Meanings of Defective Products and Strict

Liability, 32 Tenn.L.Rev. 363, 367 (1965); Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 5 (1965); Comment, 64 Mich.L.Rev. 1350 (1966); Comment, 27 Mo.L.Rev. 194 (1962); Comment, 33 Tenn.L.Rev. 341 (1966); Comment, 52 Va.L.Rev. 509 (1966).

3. Strict liability in tort lies against a distributor as well as a manufacturer. See, e.g., Canifax v. Hercules Powder Co., 237 Cal.App.2d 44, 46 Cal.Rptr. 552 (1965); Tice v. Wilmington Chem. Corp., Iowa, 141 N.W.2d 616, 626 (1966); Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 P. 2d 413 (1954); Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966); Restatement (Second) of Torts, § 402A, Comment (f) (1965); Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1141 (1960). Compare, Bowman Biscuit Co. of Tex. v. Hines, 151 Tex. 370, 251 S.W.2d 153 (1952).

The Court of Civil Appeals declined to apply the doctrine of Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942), to the present case because foodstuffs were not involved and there was no privity between the parties. Said Court further held that any cause of action based upon negligence in failing to provide adequate instructions for the use of the product was defeated by the findings of contributory negligence.

Quite often, the extension of common law doctrines is left to the court of last resort by intermediate courts and the action of the Court of Civil Appeals in the present case is in accordance with similar actions taken by other appellate courts.[4]

Only three witnesses testified at the trial, Mrs. Ellen McKisson, her husband, the plaintiff, L. A. McKisson, and Theodore P. Pritsker, a chemical engineer, called as a witness by the plaintiff. The defendant called no witnesses.

Mrs. McKisson testified that she was 52 years of age and the owner of a beauty shop and gift shop; that she was not, however, a licensed beauty operator; that on February 3, 1965, her hair had been bleached by using a lightener and peroxide; that in February 1965, a salesman gave her a sample of Zotos Lanolin Bath; that this preparation remained in the same condition from February until she attempted to use it on April 13, 1965; that on the last date mentioned, she requested one of her employees to give her a permanent using the Zotos preparation consisting of a hair conditioner and a neutralizer; that the lotion container carried a label which said, "Zotos Lanolin Bath, lanolized waving lotion, formula No. 1, for normal or resistant hair, follow accompanying directions. Zotos, Division of Sales Affiliates, Inc., Distributor"; that no directions accompanied the sample; that her hair was normal, that is, her hair was good and strong, had not been misused or abused, was of good texture and "in very good condition"; that she considered that her hair was "normal"; that she would not classify her hair as resistant but considered that she had normal hair on April 13, 1965, although it had been bleached in February; that although she was not a licensed operator, she knew that ordinarily a different formula was used for bleached hair than for unbleached hair and that most preparations which were not suitable for bleached hair contained as part of the label a clear statement, "Do not use on bleached hair", or some similar statement.

She further testified that the operator first made a test curl which was apparently satisfactory; that her hair was then rinsed and put up on rollers and then treated with the permanent wave lotion; that after the lotion had been applied, the curl was tested until it reached the "right stage of curl", and then the neutralizer was applied; that when this was done, "about the time we got down to almost to the base of my neck back here, well, the top part all started falling off, hair, rollers, and everything"; that her employee immediately starting pouring water on her hair to wash out the lotion, but although the hair on the side of the head did not fall out, all the hair on the top, the crown of her head, was gone; that by morning, her eyes were swollen shut and it took 30 to 40 minutes with hot applications to get her eyes open; that she suffered severely from the burns and swelling on her face and scalp for about four days and some of the pain persisted for ten days.

Mr. McKisson corroborated his wife's testimony as to her personal injuries, burns, swellings, etc.

4. For example, See note, Page Keeton, Products Liability—Current Developments, 40 Texas L.Rev. 193, l.c. 207, and reference to Brown v. Howard, 285 S.W. 2d 752 (Tex.Civ.App.1955, wr. ref'd n.r. e.), a case involving injury to cattle (property) rather than injury to the person, in which the Court of Civil Appeals refused to apply the rule of Decker to a chemical spray for cattle because among other reasons, the Supreme Court of Texas had not at that time extended the strict liability doctrine beyond food for human consumption.

Mr. Pritsker, the chemical engineer, testified that he was the director of the Dallas Laboratories at Dallas, Texas; that at the request of the plaintiff he examined the remaining portions of the Zotos preparation used by Mrs. McKisson which consisted of a lanolized waving lotion and a neutralizer; that he found the waving lotion contained 2.4% thioglycolic acid, 67% water and 30.6% emulsifying agents, oily clouding agents, lanolin, etc.; that the pH (a chemical term indicating the acidity or basicity of a solution) was found to be 8.9; that the neutralizer was 2.3% hydrogen peroxide, 67% water and 30.7% oily agents and emulsifiers; that thioglycolic acid, if in sufficient concentration, will act as a depilatory, i. e., a chemical agent or material that removes hair by breaking the fibers of the hair close to the roots, and that there was a reasonable probability that the waving solution had separated into two phases, thus creating in effect two solutions, one of which had a higher strength of thioglycolic acid than the other (the label contained no direction to shake before using); that this higher strength in thioglycolic acid could easily have acted as a depilatory instead of a waving lotion, and that there was "a high degree of probability that the concentrated portion of the waving lotion would cause a woman's hair to fall out or be lost".

▄▄▄ In our opinion, the plaintiff made out a case of strict liability in tort. For advertising purposes, the product was delivered to plaintiff's wife in sealed or closed containers with the expectation that it would be used by her either upon her own hair or that of one of the patrons of the beauty shop. One who delivers an advertising sample to another with the expectation of profiting therefrom through future sales is in the same position as one who sells the product. The jury found that the Zotos preparation was not reasonably fit' for the use of giving permanent waves and that Mrs. McKisson's attempted use of the product was the proximate cause of her injuries.

The evidence above discussed supports this finding. When it is shown that the product involved comes in a sealed container, it is inferable that the product reached the consumer without substantial change in the condition in which it was sold. See, e. g., Kroger Co. v. Bowman, Ky., 411 S.W.2d 339 (1967); Shoshone Bottling Co. v. Dolinski, Nev., 420 P.2d 855 (1966). It appears that nothing was done with the curling preparation which would change its properties or characteristics after it was delivered to Mrs. McKisson.

The jury also found that the defendant failed to provide adequate directions for the use of the preparation. While this issue may form the basis of liability founded upon negligence, it also has a bearing upon whether or not Mrs. McKisson made a proper use of the lotion. If the chemicals in the lotion became separated so that one portion of the contents of the container contained more thioglycolic acid than it should and in effect became a depilatory, as suggested by the testimony of the chemical engineer, the label gave no warning of the possibility or probability of such occurrence, nor did the label state that the preparation should be shaken before using or that it was unfit for bleached hair. The only warning set forth on the label, if such it may be called, was the statement that the formula was for normal or resistant hair. No other instructions accompanied the product.

The plaintiff's petition set forth two bases for recovery, namely, negligence and strict liability. Although Mrs. McKisson was not a beauty operator, we will assume that because of her ownership of the business and close connection with its operations, she would be charged with a standard of care measured by the conduct of a reasonably prudent beauty operator. Based upon such assumption, we may conclude that the jury's finding upon the contributory negligence issue would bar a recovery based upon negligence. It does not, how-

ever, bar a recovery based upon strict liability which is not based upon negligence. Torts Restatement, § 402A, Comment (n). The contributory negligence issue submitted here inquired as to whether or not Mrs. McKisson's conduct was sub-standard when measured by the test of a "reasonably prudent beauty operator".[5]

 The defendant contends that the Zotos Formula No. 1 carried a label which stated that it was for normal or resistant hair;[6] that Mrs McKisson's hair was not normal hair in that it had been bleached, and she was negligent in attempting to use the preparation. We may accept the contentions and assumptions advanced by defendant but the burden of the argument remains that Mrs. McKisson was at fault in not discovering that the product was unsuitable for bleached hair. This species of contributory negligence is not a defense to strict liability. We have discussed this matter in some detail in Shamrock Fuel & Oil Sales Co. v. Tunks, District Judge, Tex., 416 S.W.2d 779, this day decided, and need not repeat the arguments and authorities therein set forth.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

GRIFFIN, J., dissenting.

### DISSENTING OPINION

GRIFFIN, Justice.

I dissent from the holding that contributory negligence is not a defense to this action for the reasons I have set out fully in my dissent filed to the majority opinion in Shamrock Fuel & Oil Sales Co. v. Tunks et al., Tex., 416 S.W.2d 779.

5. Special Issue No. 3 contained four parts or questions designated by letters. By its answer to question (a), the jury found that the lotion in question should not have been applied to bleached hair. Questions (b) and (c) answered by the jury in the affirmative, were as follows:
"(b) Do you find from a preponderance of the evidence, if any, that a reasonably prudent beauty operator in the exercise of ordinary care would have known that the wave lotion in question should not be applied to bleached hair, if you have so found?"
"(c) Do you find from a preponderance of the evidence, if any, that the application of the lotion in question to the hair of Ellen McKisson on the occasion in question was negligence?"
Negligence was defined as meaning the failure to use ordinary care.
Question (d) was a proximate cause issue to be answered if the negligence issue was answered in the affirmative.

6. The presence of burns upon the scalp and face of Mrs. McKisson is not explained upon a theory compatible with the premise that Formula No. 1 was safe for use on normal hair. As mentioned, the defendant called no witness.