Manuel P. FREITAS et al., Appellants,

v.

TWIN CITY FISHERMAN'S COOPERATIVE ASSOCIATION et al., Appellees.

No. 532.

Court of Civil Appeals of Texas, Corpus Christi.

March 5, 1970.

Rehearing Denied March 31, 1970.

Jamail & Gano, Joseph D. Jamail, John Gano, Houston, Warren Burnett, Odessa, for appellants.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, George Byfield, Austin, Jack Wiech, Brownsville, for Twin City.

Adams, Graham, Lewis & Graham, John E. Lewis, McAllen, for Gulf Oil Corp.

Cox, Wilson, Duncan & Clendenin, John Wm. Black, Brownsville, for Aetna Casualty & Surety Co. intervenor.

## OPINION

GREEN, Chief Justice.

This is a suit for damages resulting from personal injuries received by plaintiff in a fall on December 15, 1962. Appeal is from a judgment for defendant-appellees rendered on the second trial of the case. The opinion of the Waco Court of Civil Appeals reversing and remanding for new trial the judgment for defendants based on an instructed verdict rendered on the first trial is reported in 430 S.W.2d 579, wr. ref. n. r. e.

The appellants are Manuel P. Freitas, plaintiff below, and Aetna Casualty and Surety Company, intervenor who paid workmen's compensation benefits to Freitas. Appellees, defendants below, are Gulf Oil Corporation, hereafter called Gulf, and Twin City Fisherman's Cooperative Association, subsequently referred to as Twin City. This appeal involves principally the proper application of the doctrine of strict liability in tort arising in warranty implied in law to the pleadings, evidence, and certain jury findings.

Twin City is a cooperative that serves its member shrimp boat owners by providing certain services at premises it owns and occupies adjacent to a boat channel in Port Isabel, Cameron County, Texas. One

of such services is to load the boats with diesel fuel which it bought from Gulf and stored in storage tanks on its premises. In 1958, by virtue of a contract entered into between Gulf and Twin City, a storage tank manufactured by Gulf was installed on the premises owned, occupied and controlled by Twin City. The walkways, rails and ladder pertaining to said tank were designed, made and installed by an independent contractor employed by Gulf. The storage tank was leased by Gulf to Twin City under a written contract providing that it should be used solely for the storage, handling and advertising of petroleum products purchased by Twin City from Gulf. A photograph of said tank with its ladder and platform showing its condition at the time of the accident is made a part of this opinion.

[A1598]

On the night of December 15, 1962, Freitas, a truck driver employed by Coastal Transport, Inc., was delivering diesel fuel to be placed in the Gulf storage tank on Twin City's premises. In the course of transferring the fuel from his truck-trailer to the storage tank, Freitas first went up the ladder to the filler cap at the top of the tank to "stick" the tank to determine whether it would take his load. After so doing he went down the ladder, started the process of transferring the fuel from his truck-trailer to the tank, and after waiting a while went back up the ladder to check whether the tank would take the remainder of his load. After checking, he started to descend. The platform and the ladder were not anchored to the tank, either at the ground or to any fixed object, as the evidence showed such ladders usually are.

Not being attached to the ground it was subject to side movement. The only manner in which the platform was fastened to the tank was that it was built loosely around the neck of the filler cap at the top of the tank. As Freitas stepped from the platform to the top rung of the ladder, the platform and the ladder suddenly lurched or moved, throwing him to the ground causing the injuries of which he complains.

The case was submitted to the jury upon two bases: (1) negligence, and (2) strict liability in tort arising under implied warranty. Issues of contributory negligence of Freitas were likewise submitted. The jury found that both Gulf and Twin City were guilty of negligence proximately causing plaintiff's injuries in regards to the condition of the ladder and platform. They also found Freitas negligent in his use of the ladder knowing the condition of same, and found that such negligence was a proximate cause of his injuries. Appellants agree that "the appellees' respective negligence did not give (Freitas) a basis of recovery against them because the jury found him to be guilty of contributory negligence."

Two special issues were submitted to and answered by the jury which are the basis of appellant's contention that he is entitled to judgment under the rule of strict liability notwithstanding his own negligence.[1] We copy these issues and the jury's answers as follows:

### "SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the ladder and platform in question was not reasonably safe for the purposes and uses intended for it at the time it was installed?

Answer 'We do' or 'We do not'.

We, the Jury, answer: We do

If you have answered Special Issue No. 4 'We do,' and only in that event, then answer:

### SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that such condition, if such you have found, in not being reasonably safe, was a proximate cause of the injuries sustained by Plaintiff?

Answer 'We do,' or 'We do not.'

We, the Jury, answer: We do"

After verdict, the trial court sustained motions filed by appellees to disregard the jury findings to special issues 4 and 8, and rendered a take-nothing judgment, from which Freitas and Aetna have appealed.

Before reaching the merits of appellants' points of error, we take up the proposition of lack of pleading by Freitas of strict liability as to appellee Twin City. Said appellee's first reply point is as follows:

"The trial court properly granted Twin City judgment notwithstanding the jury's answers to issues 4 and 8 because there was no pleading of strict liability or breach of implied warranty against Twin City."

Plaintiff went to trial on his Eighth Amended Original Petition, filed January 6, 1969, following the reversal of the judgment in the first trial. In addition to the fact allegations, the petition pleaded various acts of negligence against Twin City and separately pleaded negligence of Gulf. Plaintiff also alleged in Paragraph IV of his trial petition as follows:

"The Defendant, Gulf Oil Corporation, with full knowledge that the ladder would be used for climbing to the top, breached its implied warranty in the

1. Compare with issues on strict liability in McKisson v. Sales Affiliates, Inc., Tex.Sup.Ct., 416 S.W.2d 787, 790.

manufacture, assembly, and/or design of the ladder, walkway, platform, and handrail used on the tank in question, in that it was not suitable for the purpose for which it was intended, as set out below.

The Defendant totally failed in its implied warranty in the following respects and particulars, to-wit:

(a) In that the Defendant, Gulf Oil Corporation failed to design the ladder, platform, handrail, stairway or walkway in question so that it would be attached to the the tank or the ground in such a manner that would enable the Plaintiff to use the ladder safely.

(b) In that the ladder, walkway, platform, and handrail were not assembled and attached to the tank in question or the ground in such a way so as not to move under reasonable and anticipated foreseeable use, and as such it was dangerous and resulted in the ladder moving and causing the Plaintiff's injuries.

(c) In that it would not support the weight of the Plaintiff."

These allegations comprise the only pleadings of liability under breach of implied warranty, and are limited to Gulf. There was no pleading of strict liability due to breach of implied warranty as to Twin City. Prior to the submission of the case to the jury, Twin City objected to issues 4 and 8 on the ground, among others, that there was no pleading of strict liability against it. Following the verdict Twin City moved to disregard the answers to such issues naming as one reason lack of pleading. Its motion was granted.

Special issues should not be submitted to the jury where there is no pleading to support them. Rules 277, 279, T.R. C.P. Matthews v. General Accident Fire & Life Assurance Corp., Ltd., 161 Tex. 622, 343 S.W.2d 251; Murray v. Brazzel, Tex Civ.App., 438 S.W.2d 382, 386, wr. ref. n.

r. e. If objection is made to their submission because of lack of pleading, answers to such issues will not support a judgment. Harkey v. Texas Employers' Insurance Association, 146 Tex. 504, 208 S.W.2d 919. Even if no other reasons existed, the trial court properly disregarded the jury's answers to the strict liability under breach of implied warranty issues Nos. 4 and 8 as to Twin City, since such answers could form no basis for judgment against said defendant due to lack of pleading. Texas Sling Company v. Emanuel, Tex.Sup.Ct., 431 S.W.2d 538, 540. Twin City's first reply point is sustained.

However, such ruling does not remove Twin City entirely from the case. The contract between that appellee and Gulf contains an indemnity clause, and Gulf claims the right of indemnity against Twin City in the event a judgment is taken against Gulf. Although Twin City denies such right of indemnity, it joins with Gulf in opposing appellants' right to recover against either party on their claims of breach of implied warranty.

Appellants by their points of error and argument thereunder make the contention jointly and severally as to the two appellees that the trial court erred in rendering a take-nothing judgment disregarding the jury's answers to special issues 4 and 8. Appellants say in such points that there was sufficient evidence to support such findings, and that considering the evidence and jury answers appellants were entitled to judgment for damages as found by the jury against each appellee under the rule of "strict liability", and that the trial court erred in refusing to render such judgment.

Appellees in their respective briefs state as part of their reply that Gulf was not shown to be a seller engaged in the business of selling platforms and/or ladders, and that the case does not involve a product in commerce, and that Section 402A of the Restatement of the Law-Torts does not apply.

We agree with appellants in their contention that the answers of the jury to is-

sues Nos. 4 and 8, supra, were supported by evidence, and were not against the great weight and preponderance of the evidence. We have read the testimony contained in the statement of facts, most of which was also given in the first trial and is discussed in the opinion on the first appeal in 430 S.W.2d 579, et seq. But the question for us to decide is whether the evidence was such that the rule of strict liability under warranty implied by law is applicable to the present cause; i. e., whether the evidence supports the *submission* of issues 4 and 8.

The rule of "strict liability" as to non-food or consumable products was adopted by the Texas Supreme Court in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787. The Court based its decision on the provisions of Section 402A of the Restatement of the Law-Torts, Second. In the more recent case of Pittsburg Coca-Cola Bottling Works v. Ponder (1969), 443 S.W.2d 546, involving the alleged explosion of a defective coca-cola bottle, the Supreme Court said: (p. 548):

"In 1967, we finally yielded to the irrefutable logic that the rule of strict liability is the only practical vehicle for protecting the public against harm so often encountered by innocent users and consumers of defective products. We abruptly changed direction. In McKisson v. Sales Affiliates, Inc., 416 S.W. 2d 787 (Tex.Sup.1967), we applied the rule against a distributor of a permanent wave lotion which proved harmful when applied to a woman's hair and scalp. In that case, we committed the court to the rule of strict liability expressed in Section 402A of The American Law Institute's Restatement of the Law of Torts (2d Ed.) as applicable to all persons *engaged in the business of selling* who *sell a product* in a defective condition which renders it unreasonably dangerous to a user or consumer or to his property. The necessary effect of *McKisson* was to disapprove prior contrary expressions of the law as announced in Bowman Biscuit Co. v. Hines, [151 Tex. 370, 251 S.W.2d 153] supra, and Brown v. Howard, [Tex.Civ.App., 285 S.W.2d 752] supra. Thereafter, we expressly disapproved Brown v. Howard, and approved a holding of a court of civil appeals that *a seller of a defective product* is 'subject to strict liability for damage caused to the property of the ultimate consumer.' Franklin Serum Co. v. C. A. Hoover & Son, 418 S.W.2d 482 (Tex. Sup.1967). More recently, we have extended the rule to *sellers* of defective products which cause harm to non-users and non-consumers. Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.1969). We perceive no sound reason why the rule should not be applied to bottlers. The prime requirement for imposing liability on *a seller* under the rule of strict liability is proof by the plaintiff that he was injured because of a defective condition in the product when it left the hands of the particular seller. Jack Roach-Bissonnet, Inc. v. Puskar, 417 S. W.2d 262, at 278 (Tex.Sup.1967). * * " (Emphasis added)

Thus, the rule of "strict liability" as it applies in Texas is that set forth in Section 402A of the Restatement, Second. Chapter 14 deals with "Liability of Persons Supplying Chattels for the Use of Others". Only Topic 5 in Chapter 14 deals with "STRICT LIABILITY" (p. 347). Section 402A of Topic 5 is as follows:

"TOPIC 5. STRICT LIABILITY

"§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The Section clearly indicates that its scope or reach is limited to persons or concerns engaged in the business of selling products. The comments justify this reading. Comment *a* says: "This Section states a special rule applicable to sellers of products." Comment f, under the subtitle "Business of selling" says: "The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant." All of the cases cited by the American Law Institute in support of the principle of Section 402A, so far as we have been able to determine, have involved defendants engaged in the business of selling the particular products alleged to be defective.

■ Comment f indicates that the drafters of Section 402A assumed that one who manufactures a product is also normally a seller of that product. As we construe the rule and the comments, the rule of strict liability does not apply to persons who merely construct items but are not engaged in the business of selling such items. This would be the implication in Malinak v. Firestone Tire & Rubber Company, Tex. Civ.App., 436 S.W.2d 210, wr. ref. n. r. e., where the Court went to great lengths to point out that the defendant service station was engaged in the business of selling tires.

All cases in Texas which we have found supporting the strict liability rule involve a defendant engaged in selling, or placing within the regular course of commerce, the article alleged to be defective. Pittsburg Coca-Cola Bottling Works v. Ponder, supra (bottle); Darryl v. Ford Motor Company, Tex.Sup.Ct., 440 S.W.2d 630 (truck); C. A. Hoover and Son v. O. M. Franklin Serum Company, Tex.Sup.Ct., 444 S.W. 2d 596 (antibiotic serum); Jack Roach-Bissonnet, Inc. v. Puskar, Tex.Sup.Ct., 417 S.W.2d 262 (car); McKisson v. Sales Affiliates, Inc., supra (wave lotion); Shamrock Fuel & Oil Sales Co. v. Tunks, Tex. Sup.Ct., 416 S.W.2d 779 (kerosene); Gibbs v. General Motors Corporation, Tex.Sup. Ct., 450 S.W.2d 827 (Feb. 11, 1970) (pickup truck); Alberto-Culver Company v. Morgan, Tex.Civ.App., 444 S.W.2d 770, wr. ref. n. r. e. (wave lotion); Malinak v. Firestone Tire & Rubber Company, supra (tires), and others. And for cases where Texas Courts refused to extend the rule of strict liability to non-sellers of defective products, see Barbee v. Rogers, Tex.Sup. Ct., 425 S.W.2d 342 and Shivers v. Good Shepherd Hospital, Inc., Tex.Civ.App., 427 S.W.2d 104, wr. ref. n. r. e.

The necessity for "a sale" before strict liability can be imposed under Section 402A is emphasized in an article by Hon. John L. Hill, a prominent lawyer of the Texas Bar, styled "How Strict Is Strict?", 32 Texas Bar Journal (Nov. 1969) 759. We quote from his article as follows: (767)

"It would seem that there must be a 'sale' before strict liability can be imposed. However, the term 'sale' has been given some stretch by the courts, particularly in Texas and California. It seems to now be settled in Texas that, if the transaction by which the product is transmitted into the stream of commerce is 'essentially commercial' in character, liability can arise under Section 402A. * * *"

It was the platform and ladder that the jury found to be defective at the time it was installed. The evidence shows that the ladder and platform were installed by an independent contractor under contract with Gulf. There is no probative evidence in the record that Gulf was in the business of selling tanks, ladders, or platforms. The situation is analogous to that in Speyer, Inc., et al. v. Humble Oil & Refining Company, et al., U.S.Dist.Ct.Pa.1967, 275 F.Supp. 861, aff'd. U.S.Ct.App.3rd Circuit 1968, 403 F.2d 766. Plaintiffs sued Humble for property damages resulting from a fire caused by a defective pump which Humble had purchased from plaintiffs and leased back. The trial court rejected the strict liability rule. The Court of Appeals, in affirming said: (772)

"We now turn to defendant Humble, at whose direction the service contractor installed the flexsteel hose. Preliminarily, we must decide whether Humble can properly be classified as a 'seller' or moreover, 'a seller engaged in the business of selling such a product', within the provisions of Section 402A. If Humble is not such a seller, then no responsibility may attach under the doctrine of strict liability.

"The trial court concluded: 'The evidence showed that Humble was not in the business of selling pumps. It showed, on the contrary, that the pump in question was purchased by plaintiffs from Cemico and sold, still in place, to Humble who then leased it to plaintiffs. To find Humble liable under Section 402A because it furnished the pump assembly would thus be contrary to both the law and facts of the case.' 275 F.Supp. at 868. We agree."

\*   \*   \*   \*   \*   \*

"The trial court found that Humble was not a seller within the meaning of Section 402A. We concur in that conclusion. \* \* \*"

The case of Cintrone v. Hertz Truck Leasing & Rental Service, 1965, 45 N.J.

434, 212 A.2d 769, is not in any way contrary to what we have stated above. In that case it was shown that Hertz was in the business of leasing cars and trucks to others and placing said vehicles in the stream of commerce in the same way as a manufacturer or retailer.

For the reasons heretofore stated the trial court correctly disregarded special issues 4 and 8 supra, and ruled that this was not a case for the application of the "strict liability" rule under implied warranty. It is not necessary, in the disposition of this appeal, that we pass on the remaining reply points of appellees in support of the judgment.

Judgment affirmed.