## MELODY HOME MANUFACTURING COMPANY, Appellant,

v.

## Elby E. MORRISON et ux., Appellees.

### No. 15763.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 29, 1971.

Fulbright, Crooker, Freeman, Bates & Jaworski; Thomas P. Sartwelle, Houston, for appellant.

W. R. Malone, Huntsville, for appellee.

PEDEN, Justice.

This is an appeal from a second order overruling a plea of privilege in a products liability case. When this cause was appealed to us after the earlier hearing we reversed and remanded it to the trial court in order that the facts might be more fully developed. We refer to our opinion at 455 S.W.2d 825 (1970, no writ) for a discussion of the background of this appeal.

The appellees-plaintiffs rely on Exception 23 of Article 1995, Vernon's Annotated Texas Civil Statutes, to retain venue of this cause in Walker County on the basis that a part of it arose there.

The appellant's points of error are that there was 1) no evidence or 2) insufficient evidence to establish an exception to exclusive venue in Tarrant County under Section 23 of Article 1995. The second point makes it necessary for us to review all the evidence.

Melody Home admitted that it manufactured a 1969 Melody Urban Manor bearing serial number 169 260 14319. Appellee Mr. Morrison testified that he lives in that mobile home in Huntsville, Texas, and that he bought it from Capri Mobile Home Sales

at Pharr, Hidalgo County, Texas in May of 1969. It was delivered in Huntsville by Capri about thirty days later. He examined it before buying it and saw it twice more before it was delivered. It was not connected to water or electric lines when he saw it in Pharr. An agent of the owner of Capri Mobile Home Sales delivered it, set it up on blocks and hooked up the water supply. The water from its faucets tastes bad, but the water from other mobile homes near his is clear and tastes good—like the water outside his trailer. All the trailers in the trailer park where he lives have the same water source. The water from the faucets in his trailer contains a black oily liquid. He and his wife got sores from bathing in the water, and when his wife's parents came to visit, they also got sores from bathing in the water. His daughter got a kidney infection twice from drinking it. They incurred medical expense for treatments from Dr. Atkins.

The trailer has not been moved since it was delivered and set up in Huntsville. When that occurred and the water supply was connected, he found that some of the plumbing was missing and some of the connections were loose. The drains from both sinks to the main drain pipe were lacking. He didn't observe that these pipes were missing when he inspected the trailer in Pharr because he couldn't see back under the kitchen cabinet.

Appellee Mrs. Morrison testified as to the water problem that her daughter drank the water in their trailer for about four months before they found out what was causing her kidney trouble.

Two men from the defendant's (appellant's) factory came in response to their repeated complaints. They took the paneling off the closets so they could disconnect the water pipes, then blew air through them, causing a soft, black, bad smelling tar-like substance to come out of the faucet. Before they could catch it, it went down the drain. The water from their faucets still has a bad odor and still con-

tains a black substance that floats on top. She found a flat worm in some water she drew from a faucet in their trailer on the morning of the hearing.

She was present when their trailer was delivered. It was jacked up, put on blocks and the water and sewer connections were made by the man who delivered it. Before he connected the water supply to the trailer, he had to unscrew a metal cover that fit over the trailer's only water input pipe. When he connected the water supply, the water came from many places in the interior of the trailer where pipes were missing or the connections were bad.

On cross-examination the Morrisons testified that they did not know when their trailer was delivered to Capri Mobile Homes in Pharr or how it got there. They don't know when it was built, but they bought it in May of 1969 and their papers show that it is a 1969 model. They don't know whether Capri bought it from Melody Home Manufacturing Co. or from someone else. It is 60 feet long and 12 feet wide, and the distance from Pharr to Huntsville is about 400 miles. When they bought the trailer, they dealt exclusively with Capri Mobile Home Sales.

When they examined the trailer in Pharr it appeared to be all right. The factory representatives who came to Huntsville later showed them some dents in the aluminum skin on top of the trailer, and there is a hole in the covering on the bottom.

The water pipe leading into the trailer is one-inch pipe. Mrs. Morrison didn't know how long the cover had been screwed onto the water pipe, but she saw it taken off when the water supply was connected.

We affirm the trial court's denial of the appellant's plea of privilege. The evidence supports the presumed findings of the trial court that 1) when the trailer was bought, its water system was in a defective condition unreasonably dangerous to the users and caused them physical harm because it contained harmful foreign substances and

2) this defect existed when the trailer left the hands of the manufacturer. The first of these inferences was amply supported by the evidence and there were several aspects of it which raised a fact issue as to the latter one. The cap on the water input pipe was removed when the trailer was delivered. The trailer was a new 1969 model and was bought by the Morrisons in May, 1969. The water supply was not hooked up when they saw the trailer at the dealer's place of business, and when it was connected a lot of water leaked inside the trailer because several pipes were missing and several plumbing connections required tightening.

The Texas Supreme Court in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.1967), extended the strict liability doctrine to products other than foodstuffs. "To exclude circumstantial evidence that the product was defective at the time of the sale would frustrate the beneficial purposes of the doctrine. It would be equally difficult, if not impossible, for the plaintiff to rebut by direct evidence all of the conceivable possibilities which would account for the defective condition other than the existence of the defect at the time of the sale. Such direct evidence should not be required, particularly when dealing with a latent defect." Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.Sup.1969). The Darryl case involved a bent push rod in the brake system of a truck. The court pointed out that the matter was similar to the sealed container cases like McKisson, supra, and others. The evidence in the instant case places it in the same category as the Darryl case, which quoted from McKisson, supra: "When it is shown that the product involved comes in a sealed container, it is inferable that the product reached the consumer without substantial change in the condition in which it was sold."

See also Sharp v. Chrysler Corp., 432 S. W.2d 131 (Tex.Civ.App.1968, writ ref. n. r. e.).

There was evidence of other latent defects in the trailer, but we will not lengthen this opinion by reciting it.

Affirmed.